# SMITHSONIAN INSTITUTION v. ST. JOHN, EXECUTOR OF WALLACE C. ANDREWS, DECEASED.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 613.   Argued April 5, 6, 1909.—Decided May 17, 1909.

*Quære:* Where a petition to the highest court of the State for rehearing asserts that a Federal question had been set up in the brief and arguments is simply denied with the statement that no Federal question had been raised in that court, whether this court has jurisdiction to review the judgment on writ of error.

This court cannot decline jurisdiction when it is plain that the fair result of a decision of the state court is to deny a constitutional right. *Rogers* v. *Alabama*, 192 U. S. 226.

It is as obligatory upon the courts of a State to give the same full force and effect to the constitution of another State as it must give to its judicial proceedings. *Chicago & Alton Railroad* v. *Wiggins Ferry Co.*, 119 U. S. 615.

The mere construction, even if erroneous, by a state court of the statute or, as in this case, of a provision of the constitution of another State does not deny to it the full faith and credit demanded by the Federal Constitution.

The decision of the Court of Appeals of New York that a statute of Ohio authorizing the formation of corporations general in terms, but applicable to a special situation, did not contravene the prohibition of the constitution of Ohio against the general assembly passing any special act conferring corporate powers, and that a corporation organized under such a statute could take as legatee, *held*, not to question the validity of the constitutional provision and, even if erroneous, such decision did not repudiate the obligations of the full faith and credit clause of the Federal Constitution and is not reviewable by this court under § 709, Rev. Stat.[1]

Writ of error to review 191 N. Y. 254, 192 N. Y. 382, 583, dismissed.

THIS is in effect a controversy between the Smithsonian Institution of Washington, D. C., and the Andrews Institute for Girls, a corporation of the State of Ohio, concerning a will made by Wallace C. Andrews, a resident of the city, county and State of New York, who died in that city on April 7, 1899. Both Mr. Andrews and his wife perished on that day in a fire in their dwelling house in New York city. Whether husband or wife died first, is not known. She was twelve years younger than he. They had no children. The will was executed on November 12, 1891. After some special gifts, which need not be noticed, the will provides:

"Fourth: Upon the death of my said wife, I devise and bequeath to the corporation hereinafter directed to be formed, all the excess and residue of my estate over the sum of five hundred thousand dollars specified in the third paragraph hereof.

"Fifth: I direct my executor and executrix as soon as practicable after my decease and during the lives of my said wife and her said brother or the life of the longest liver of them, to

---

[1] In this case the New York court held: Whether an act general in form is a mere device to evade a wholesome constitutional provision [against special acts conferring corporate powers] is largely dependent upon the special circumstances. If the act relates to persons and things as a class, and is neither local nor temporary, the mere fact that its practical effect is special and private does not necessarily prove that it violates constitutional provisions against special legislation.

procure under the laws of the State of Ohio, an incorporation to be formed with proper powers, for the purpose of establishing an institution on the farm known as the Williams Farm, formerly owned by me and now owned by my wife, fronting on Erie street, in the town of Willoughby, Lake county, Ohio, or if said farm be for any cause not available, then on other suitable premises in the said town of Willoughby, for the free education of girls and for their support in proper cases during education, with a special view toward rendering them self-supporting.

"Said institution shall contain, among others, a Sewing Department, Cooking Department, Designing Department and Departments of Phonography and Typewriting and other useful work that would afford the pupils employment in life, including such new discoveries and inventions as may be made from time to time tending to enlarge the opportunities for useful and honorable employment for women, and such as will aid them in obtaining honorable and independent positions in life. Such school to be open only to girls between the ages of ten and sixteen, both inclusive.

"Not exceeding one-tenth of the sum devoted to the said institution by the fourth paragraph hereof may be used for the erection of suitable buildings therefor on the said farm, or in the contingency above specified, for the purchase of suitable premises in said town and the erection of such buildings thereon, and the income of the remaining nine-tenths shall be devoted to the support and maintenance of said institution.

"If, when the said sum shall be received by the said corporation, the one-tenth thereof shall not, in the judgment of the directors, be sufficient for such erection or such purchase and erection as the case may be, the whole sum may, in their discretion, be allowed to accumulate until the one-tenth thereof with its accumulation shall be so sufficient, when such one-tenth may be used therefor, while the income of the remaining nine-tenths of said sum and accumulations shall be devoted to the support and maintenance of said institution.

"The charter of the said corporation shall also provide, if and so far as may be consistent with law and practicable, for the management of the said corporation by a board of five directors, to consist of the Governor for the time being of the State of Ohio, the Member of Congress for the time being for the Congressional district embracing said Town of Willoughby, the Treasurer for the time being of said County of Lake, the Mayor for the time being of Willoughby, and the said Gamaliel C. St. John, and for the choice of a resident of Willoughby by the said Governor as successor to the said St. John as often as the fifth place shall become or be vacant.

"Sixth: If my said wife shall die before me, then the dispositions provided for in the third and fourth paragraphs hereof shall take effect upon my death.

"Seventh: I direct my said executor and executrix as soon as they may deem advisable, but within two years after my decease, to sell all my real estate and invest the proceeds in interest paying securities, and as to all my estate I give them and my trustees power to invest and re-invest the same or any part thereof, having regard both to income and safety.

"Eighth: In case my intention with respect to the said institution for girls shall because of illegality fail, or become impossible of realization, I then devise and bequeath the sum intended for it to the Smithsonian Institution at Washington, District of Columbia, to be devoted to the purposes for which it was established.

"Ninth: I appoint my said wife executrix and my said brother-in-law executor of this my will, and neither as such nor as trustees shall they be required to give security. All the powers herein granted to them may be exercised by the survivor of them and unless limited to their lives, by their successor or successors in the administration of my estate."

Mrs. Andrews, dying at the same time her husband did, his brother-in-law, Mr. St. John, duly qualified as executor and trustee under the will. Thereafter he commenced this suit in the Supreme Court of New York County, seeking a con-

struction of the will and a determination of the rights of the Andrews Institute for Girls, the Smithsonian Institution and the heirs at law and next of kin of the deceased. The Andrews Institute for Girls, the Smithsonian Institution, Chief Justice Melville W. Fuller as Chancellor thereof, the Attorney-General of the State of New York, and the heirs and next of kin of the deceased, were made parties defendant. At a hearing in a special term of the Supreme Court of the county of New York it was held that "the defendant, the Andrews Institute for Girls, is entitled to the residuary estate of the said Wallace C. Andrews, deceased, together with the income thereof which has accrued since the death of said deceased, after paying the expenses of administration," and also that the defendant, the Smithsonian Institution, has no interest in the estate of the said Wallace C. Andrews, deceased. This decision was sustained by the Appellate Division of the First Department, and thereafter with a slight modification by the Court of Appeals of the State, which remitted the record of the Supreme Court of New York city, where the final judgment was entered. Thereupon that judgment was brought here on a writ of error by the Smithsonian Institution and its Chancellor.

The defendants filed a motion to dismiss, which was postponed until the final hearing and, the case is now before us on such final hearing and motion to dismiss.

*Mr. Frank W. Hackett* and *Mr. Edmund Wetmore* for plaintiffs in error:

The Federal question herein was properly and seasonably raised.

That a state court holds that the Federal question was not raised is not conclusive. This court will look into the record and judge for itself what was the fact. It may find that the state court has ignored a claim of constitutional right. Such action is the equivalent of denying the Federal right. *Des Moines Nav. Co.* v. *Homestead Co.,* 123 U. S. 552; *Chapman* v. *Goodnow,* 123 U. S. 540; *Rogers* v. *Alabama,* 192 U. S. 230.

Our affidavit forming a part of the papers upon which the Court of Appeals deliberated sets forth in detail the circumstances of our claiming the right in our brief as well as upon the oral argument. There can be no question that the character of the constitutional right asserted was brought to the knowledge of the court and it is obvious that the court denied it. Although the court says that no Federal question was raised, it is apparent that this can be nothing more than the expression of a view entertained by the court of the facts as they had occurred. It is enough to say that even had the court failed to perceive the true character of our claim at the hearing, it was later fully explained in our affidavit, so that there would appear to be no justification for the conclusion announced by the court as to the fact of our raising a Federal question.

This court must judge for itself of the true nature and effect of the order relied upon. *Great West. Tel. Co.* v. *Purdy*, 162 U. S. 335.

A right may be specially set up and claimed, though not in terms stated to be a right claimed under the Constitution. *Tilt* v. *Kelsey*, 207 U. S. 51.

Where the Federal question is raised for the first time in the Supreme Court of a State and that court takes no notice of it, in its opinion, if this court sees that the question was in fact raised, it will take jurisdiction. *Arrowsmith* v. *Harmoning*, 118 U. S. 194.

The settled practice of this court is to look into the record in order to ascertain whether in fact there was presented to the State court a claim of a constitutional right. *McCullough* v. *Virginia*, 172 U. S. 117.

The benefit of claiming the protection of the Constitution is not dependent upon an adherence to technical form. It is sufficient if it appear from the record that the right was especially set up or claimed in such a manner as to bring it to the attention of the court. *Chicago & Burlington R. R.* v. *Chicago*, 166 U. S. 231; *Mo., Kan. &c. Ry. Co.* v. *Elliott*, 184 U. S. 534.

The New York Court of Appeals denied a right claimed by

the Smithsonian Institution under the Constitution of the United States. It gave no faith and credit to the prohibition in the Ohio constitution against passing special acts conferring corporate powers.

Had the Court of Appeals heeded that prohibition it must necessarily have found that the gift to the Andrews Institute had failed for illegality and by the operation of the alternative bequest, went to the Smithsonian Institution.

That court sustained the constitutionality of the act of 1902 against the objection of plaintiffs in error that it fixed an arbitrary standard in order to suit this Andrews will. The Federal question was raised upon a further and different point as follows:

The testator required certain restrictions to go into the charter. Plaintiffs in error contended that the Andrews Institute as now incorporated is not the incorporation the testator intended, because these restrictions are not in the charter. Anticipating a holding that the effect of copying the will into the articles was to give efficacy to such restrictions, plaintiffs in error contended that if the court should so hold it would convert the act into a special act conferring corporate powers. The court did so hold without paying attention to the Ohio constitution and thus denied full faith and credit to that constitution.

*Mr. James W. Hawes, Mr. Virgil P. Kline* and *Mr. Harold Nathan* for defendants in error. *Mr. Hawes* for defendant in error St. John:

Where the record discloses that if a question has been raised and decided adversely to a party claiming the benefit of a provision of the Constitution or laws of the United States, another question, not Federal, has also been raised and decided against such party, and the decision of the latter question is sufficient, notwithstanding the Federal question, to sustain the judgment, this Court will not review the judgment. *Jenkins* v. *Loewenthal,* 110 U. S. 222; *Crescent City Co.* v. *Butcher's Union,* 120 U. S. 141, 156, 157; *Eustis* v. *Bolles,* 150 U. S. 361;

*Hammond* v. *Conn. Life Ins. Co.,* 150 U. S. 633; *Mo. Pac. Ry. Co.* v. *Fitzgerald,* 160 U. S. 556; *Harrison* v. *Morton,* 171 U. S. 38; *Leathe* v. *Thomas,* 207 U. S. 93; *Arkansas So. R. R. Co.* v. *German Bank,* 207 U. S. 270; *Vandalia R. R. Co.* v. *South Bend,* 207 U. S. 359; *Elder* v. *Wood,* 208 U. S. 226, 233.

Assuming that a Federal question was involved in this case, no Federal question was raised by plaintiffs in error prior to their motion for a reargument; and as the Federal question was not considered and acted upon by the Court of Appeals upon that motion, the raising of the Federal question came too late. *McMillan* v. *Ferrum Mining Co.;* 197 U. S. 343; *Disconto Gesellschaft* v. *Umbreit,* 208 U. S. 570; *Paraiso* v. *United States,* 207 U. S. 368; *Harding* v. *Illinois,* 196 U. S. 78, 84.

No Federal question is involved in this case.

The courts of New York nowhere denied or questioned the validity of the constitutional provision of Ohio, but recognized its existence and force in their opinions, admitted it in evidence and expressly found it as a matter of fact.

It is only when the power to enact a statute, as it is by its terms or is made to read by construction, is fairly open to denial and denied, that the validity of such statute is drawn in question. *Balt. & Pot. R. R. Co.* v. *Hopkins,* 130 U. S. 210, 224; *United States* v. *Lynch,* 137 U. S., 280, 285.

When in the courts of a State the validity of a statute of another State is not drawn in question, but only its construction, no Federal question arises. *Allen* v. *Alleghany Co.,* 196 U. S. 458; *Glenn* v. *Garth,* 147 U. S. 360. See also: *Johnson* v. *New York Life Ins. Co.,* 187 U. S. 491; *Hamblin* v. *Western Land Co.,* 147 U. S. 531; *New Orleans Water Works Co.* v. *Louisiana,* 185 U. S. 336; *Sawyer* v. *Piper,* 189 U. S. 154; *Lloyd* v. *Matthews,* 155 U. S. 222, 228.

In addition to the above, the following separate briefs were filed herein: By *Mr. Harold Nathan* in behalf of defendants in error Norman C. Andrews *et al.;* by *Mr. Henry M. Earle* in behalf of defendant in error Edith A. Logan; by *Mr. Virgil P.*

*Kline, Mr. Henry Wollman* and *Mr. Sheldon H. Tolles* on behalf of the Andrews Institute for Girls; and by *Mr. William S. Jackson,* Attorney-General of the State of New York. *Mr. Edward R. O'Malley,* who succeeded *Mr. Jackson* as Attorney-General of the State of New York, also filed a brief herein.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

It is difficult to spell out from the record in this case the decision of any question arising under the Constitution and laws of the United States. Neither in the pleadings nor in the opinions is there a direct reference to any special provision of the Federal Constitution. It is true that after the decision by the Court of Appeals an affidavit was filed by one of the counsel for plaintiffs in error in support of a petition for a rehearing, stating that in the brief, as well as upon the oral argument in that court, a Federal question (describing it) had been presented and discussed, which petition was denied by the Court of Appeals in these words:

"Ordered, that the said motion be and the same hereby is denied, with ten dollars costs, no Federal question having been raised in this court."

It is unnecessary to determine whether this of itself is sufficient to give jurisdiction to this court. The language of the Court of Appeals may be construed as denying that any such matter was brought to its attention as stated in the affidavit, or as holding that it presented no Federal question. *Mallett v. North Carolina,* 181 U. S. 589; *M., K. & T. Ry. Co. v. Elliott,* 184 U. S. 530; *Leigh v. Green,* 193 U. S. 79; *McKay v. Kalyton,* 204 U. S. 458.

Counsel further contend that there was necessarily involved in the decision of the case the determination of a question arising under the Constitution and laws of the United States, and that hence this court has jurisdiction of this writ of error, even if the question was not formally referred to by counsel

or the state courts. *Chapman v. Goodnow*, 123 U. S. 540–548; *Navigation Company v. Homestead Company*, 123 U. S. 552; *McCullough v. Virginia*, 172 U. S. 102, 117; *M., K. & T. Ry. Co. v. Elliott*, 184 U. S. 530, 534; *Rogers v. Alabama*, 192 U. S. 226, 230, in which last case it is said:

"It is a necessary and well-settled rule that the exercise of jurisdiction by this court to protect constitutional rights cannot be declined when it is plain that the fair result of a decision is to deny the rights. . . . There can be no doubt that if full faith and credit were denied to a judgment rendered in another State upon a suggestion of want of jurisdiction, without evidence to warrant the finding, this court would enforce the constitutional requirement. See *German Savings Society v. Dormitzer, ante*, p. 125."

The question upon which counsel rely arises upon Article IV, § 1, of the Federal Constitution, which reads:

"Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

It is not pretended that any judgment of the State of Ohio was disregarded by the courts of New York, but it is contended that full force and effect was not given to the constitution of the State of Ohio. This duty is as obligatory as the similar duty in respect to the judicial proceedings of that State. *Town of South Ottawa v. Perkins*, 94 U. S. 260, 268; *Chicago & Alton Railroad Company v. Wiggins Ferry Company*, 119 U. S. 615, 622, in which Mr. Chief Justice Waite said:

"Without doubt the constitutional requirement, art. IV, sec. 1, that 'full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State,' implies that the public acts of every State shall be given the same effect by the courts of another State that they have by law and usage at home. This is clearly the logical result of the principles announced as early as 1813 in *Mills*

*v. Duryee,* 7 Cranch, 481, and steadily adhered to ever since." *Hancock National Bank* v. *Farnum,* 176 U. S. 640, 642.

On the other hand, it is settled that the mere construction by a state court of the statute of another State, without questioning its validity, does not deny to it the full faith and credit demanded by the constitutional provision. *Glenn* v. *Garth,* 147 U. S. 360; *Lloyd* v. *Matthews,* 155 U. S. 222; *Banholzer* v. *New York Life Insurance Company,* 178 U. S. 402; *Johnson* v. *New York Life Insurance Company,* 187 U. S. 491; *Finney* v. *Guy,* 189 U. S. 335; *Allen* v. *Alleghany Company,* 196 U. S. 458.

In the light of these decisions we pass to consider the particular question presented. Sections 1 and 2 of article 13 of the Ohio constitution read:

"SEC. 1. The general assembly shall pass no special act conferring corporate powers.

"SEC. 2. Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed."

By § 3235, 2 Bates's Ann. Ohio Statutes (6th ed.), p. 1836, it is provided: "Corporations may be formed in the manner provided in this chapter for any purpose for which individuals may lawfully associate themselves, except for carrying on professional business;" and immediately following this section are those naming the conditions and methods of incorporation. After the death of the testator, and on March 19, 1902, the general assembly of the State of Ohio passed an act (Laws 1902, p. 61), the first section of which is as follows:

"SEC. 1. Whenever, by the last will and testament of any person which has heretofore been, or shall hereafter be, duly admitted to probate in this State or elsewhere, any decedent has devised or bequeathed, or may devise or bequeath, his or her property, or any portion thereof, for charitable uses within this State, or for the establishment and maintenance of any industrial or educational school or institution to be located at any place within this State; and whenever, in any

such will and testament it has been, or may be, provided that the executor or executors thereof shall organize a corporation under the laws of this State for the purpose of receiving the property so devised or bequeathed, and carrying out the charitable purposes in such will expressed, or establishing and maintaining the institution or school therein provided for, and such will further provides for the management of such corporation by a board of trustees or directors, consisting, in part, of officials of this State, of the county in which such charities are to be administered or such institution or school located, the officials of any municipal incorporation in said county, and the member of Congress for the district of which said county forms a part, or any of such officials, and names any other person or persons to be associated with said officials or any of them, and provides for the appointment of a successor or successors to the person or persons so appointed to act with such officials in any manner specified in said will, such executor or executors, or his or their successors in office, and the persons hereinafter named, may constitute themselves a body corporate, with the general powers of benevolent incorporations."

The second section requires that a copy of the will or testament, for the carrying out of the provisions of which the corporation is organized, shall be set forth in the articles of incorporation. Thereafter the Andrews Institute for Girls was incorporated, containing, as required by § 2, the will of the testator. Now it is contended by counsel for the plaintiffs in error that this act was a special act conferring corporate powers, and that therefore it and the incorporation made under it was in conflict with the constitution of Ohio. It is not suggested that there has been any decision of the courts of Ohio in reference to the validity of the act or subsequent incorporation of the Andrews Institute, but it is insisted that it is so obvious that the act is a special act conferring corporate powers, inasmuch as the terms of the will of an individual are the basis of the act and the incorporation that the courts of

New York could not have given force and effect to the pro-
hibitions of the constitution of Ohio. Nevertheless, whether
rightly or wrongly, the New York courts held that there was
no violation of the constitution of Ohio, the Court of Appeals
saying in its opinion:

"At the death of the testator the general statutes of Ohio
provided that corporations might be formed for any purpose
for which individuals might lawfully associate themselves,
except for carrying on professional business. 2 Bates's Ann.
Ohio Statutes (6th ed.), p. 1836.

"Subsequent to the death of the testator and in March,
1902, an act was passed by the general assembly of the State
of Ohio entitled 'An act to provide for the administration of
charitable trusts in certain cases.' If we assume that such act
was passed to aid in the incorporation of the Andrews In-
stitute for Girls, it is not necessarily unconstitutional for that
reason. It is not an uncommon thing in any State for ques-
tions to arise making it desirable or perhaps necessary for
further general legislation to enable persons interested to
carry out desired and desirable measures. The fact that
such further general statute is passed to aid a particular per-
son for the time being does not make the act a special, as
distinguished from a general one. Whether an act, general in
form, is a mere device to evade a wholesome constitutional
provision is largely dependent upon the special circumstances
of each case. If the act relates to persons, places and things
as a class, and is neither local nor temporary, the mere fact
that its practical effect is special and private does not neces-
sarily prove that it violates constitutional provisions against
special legislation. *Matter of N. Y. El. R. R. Co.*, 70 N. Y.
327–344; *In the Matter of Church*, 92 N. Y. 1; *Matter of Henne-
berger*, 155 N. Y. 420, 426; *People* v. *Dunn*, 157 N. Y. 528;
*Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *People ex rel.
Clauson* v. *Newburgh & S. Plank Road Co.*, 86 N. Y. 1; *Matter
of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540; *Waterloo W. M.
Co.* v. *Shanahan*, 128 N. Y. 341; *Ferguson* v. *Ross*, 126 N. Y.

459; *Sun P. & Pub. Association* v. *Mayor &c. of N. Y.*, 152
N. Y. 257.

"The act so passed by the general assembly of the State of
Ohio in 1902 would not seem to be in violation of the constitu-
tion of that State. *Platt* v. *Craig*, 66 Ohio St. 75; *State ex rel.*
v. *Spellmire*, 67 Ohio St. 77; *Gentsch* v. *State of Ohio*, 71 Ohio
St. 151; *Cinn. Street R. R. Co.* v. *Horstman*, 72 Ohio St. 93;
*State of Ohio* v. *Sherman,* 22 Ohio St. 411.

"Subsequent to the death of the testator, and on the 8th
day of May, 1902, 'The Andrews Institute for Girls' was in-
corporated pursuant to the laws of the State of Ohio 'for the
purpose of receiving the property devised and bequeathed in
and by the wills of Wallace C. Andrews and Margaret M. St.
John Andrews, late of the city and State of New York, to the
corporation therein directed to be formed and for the purpose
of carrying out the charitable purposes in such wills expressed,
and of establishing and maintaining the institution therein
provided for.'

"The articles of incorporation include a complete copy of
the will of the testator and also of the will and codicil of
Margaret M. St. John Andrews. They also provide that the
corporation shall be located in the town of Willoughby, Ohio,
and name as members of the corporation the persons proposed
in the will of said testator, together with two other persons in
the State of Ohio, which persons so named constitute the
board of directors for the administration and management of
the property and trust or other funds of the corporation, and
for the control and management of said institution. Said act
of the general assembly of the State of Ohio among other
things provides: 'The attorney-general of the State of Ohio
shall in his official capacity have power to bring proceedings
in any court of record and enforce any such devise or bequest
whenever he deems such action necessary for the protection
and carrying out of the purposes named in said last will and
testament without waiting for the organization of such cor-
poration.' "

That there is some foundation for the conclusion reached by the Court of Appeals is obvious from the opinions of the Supreme Court of Ohio, cited in the foregoing quotation. It is unnecessary to hold that there was no error in the ruling of the Court of Appeals. It is enough for the purposes of this case to hold that that court did not question the validity of any provision of the constitution of the State of Ohio, and did not sustain any act or incorporation which it held to be in conflict with such provision. At most, there was simply a matter of error and not a repudiation of the obligations of the Federal Constitution.

We do not see that any provision of the Federal Constitution has been violated, and the writ of error is

*Dismissed.*

THE CHIEF JUSTICE did not hear the arguments and took no part in the decision of this case.