## ST. LOUIS, KANSAS CITY AND COLORADO RAILROAD COMPANY *v.* WABASH RAILROAD COMPANY AND CITY OF ST. LOUIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

### SAME *v.* SAME.

PETITION FOR WRIT OF CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 57, 301.   Argued December 9, 1909.—Decided April 11, 1910.

Jurisdiction in case of an intervention is determined by that of the main case, and where the original foreclosure case was based solely upon diverse citizenship an appeal from the judgment of the Circuit Court of Appeals on a petition to enforce rights granted by a decree in an intervention in such foreclosure suit does not lie to this court.

Where the Circuit Court of Appeals remands a suit to the Circuit Court with instructions to enter a decree, the Circuit Court cannot,

without permission from the Circuit Court of Appeals, introduce new questions into the litigation; and the unwarranted introduction of new questions cannot be made the basis of jurisdiction. The mere construction of a decree involves no challenge of its validity.

It is proper for this court to grant certiorari where the questions involve the construction of a prior decree of a United States Circuit Court granting rights of use of railroad tracks and terminal facilities in a great city, and where not only the private interests of the railroad companies and of the shippers, but also the greater interests of the public, require such rights to be settled.

Where a decree gives to another company the equal use and benefit of the right of way of a railroad company in a terminal city on a basis of compensation and apportionment of expenses, with provision for modification in case of unexpected changes, it will be construed as applying to the terminal facilities and the connections with industrial establishments as the same naturally increase in a growing city, and not to the mere right of way as it existed when the decree was entered, and the court has power to provide for the use of such increased facilities on a proportionately increased rental based on the increased valuation.

152 Fed. Rep. 849, modified.

THE facts, which involve the construction of the decree of the Circuit Court in 29 Fed. Rep. 546, as affirmed by this court in the case of *Joy* v. *St. Louis*, 138 U. S. 1, are stated in the opinion.

*Mr. Frank Hagerman*, with whom *Mr. W. F. Evans* and *Mr. M. A. Low* were on the brief, for appellant in No. 57 and petitioner in No. 301.

*Mr. James L. Minnis*, with whom *Mr. Wells H. Blodgett* was on the brief for appellee in No. 57 and respondent in No. 301.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court, after reading the following memorandum:

This opinion was prepared by our Brother BREWER, and had been approved before his lamented death. It was then recirculated and is adopted as the opinion of the court.

On January 6, 1886, there was entered in the Circuit Court

of the United States for the Eastern District of Missouri a decree of foreclosure and sale of the Wabash, St. Louis and Pacific Railway Company, hereinafter called the Wabash Company. In that suit, before the execution of the deeds to the purchasing committee, a railway corporation known as the St. Louis, Kansas City and Colorado Railroad Company (hereinafter called the Colorado Company) and the city of St. Louis intervened to compel the Wabash Company to give to the Colorado Company the use of its tracks and a right of entrance over them to the Union Depot of that city. On that intervention a decree was entered finding the equities in favor of the intervenors, and granting the Colorado Company the use of the tracks and right of way. 29 Fed. Rep. 546. On appeal to this court the decree of the Circuit Court on the intervention was, on January 19, 1891, sustained. *Joy* v. *St. Louis*, 138 U. S. 1.

A dispute having arisen as to the rights granted by that decree, a petition was filed at the March term, 1902, of the Circuit Court in the original foreclosure case to enforce those rights as the Colorado Company claimed they existed. A large amount of testimony was taken upon this application, and a decree entered April 2, 1906. Thereupon an appeal was taken to the Circuit Court of Appeals for the Eighth Circuit, which, on April 3, 1907, reversed the decree and remanded the case "with directions to enter a decree not inconsistent with the views" expressed in the opinion of the court. 81 C. C. A. 643. The case went back to the Circuit Court, and after an amendment to the petition, which was allowed by the court, a decree was entered in obedience to the mandate, from which decree an appeal was again taken to the Circuit Court of Appeals, and also to this court. On the appeal to the Circuit Court of Appeals the record was filed in that court, and thereupon an application for a certiorari was made to this court, so that two cases are before us with records precisely alike, one the appeal from the Circuit Court directly to this court (being case No. 57) and the other the petition for a certiorari to the

Court of Appeals (being case No. 301). [This petition was
filed and presented to the court November 30, 1908, and on
December 7, 1908, consideration of the petition was postponed
to be heard with No. 57.]

The Wabash Company has filed a motion to dismiss No. 57,
the case appealed directly to this court. The jurisdiction of
the original foreclosure suit was based solely upon diverse
citizenship, and it has been repeatedly decided that the juris-
diction in the case of an intervention is determined by that of
the main cause. *Rouse* v. *Letcher,* 156 U. S. 47; *Gregory* v.
*Van Ee,* 160 U. S. 643; *Carey* v. *Railway. Company,* 161 U. S.
115; *Rouse* v. *Hornsby,* 161 U. S. 588; *Pope* v. *Railway Com-
pany,* 173 U. S. 573.

If this be true in respect to an intervention, *a fortiori* must
it be true in respect to a petition to enforce rights granted by
the decree in the intervention. Nor is this rule changed by the
fact that when this case went back from the Circuit Court of
Appeals to the Circuit Court the latter court authorized an
amendment to the petition, alleging that the decree ordered by
the Court of Appeals failed to give full faith and credit to the
original decree in the intervention proceedings, for, as said in
*Pope* v. *Railway Company, supra* (p. 578):

"And this is true although another ground of jurisdiction
might be developed in the course of the proceedings, as it must
appear at the outset that the suit is one of that character of
which the Circuit Court could properly take cognizance at the
time its jurisdiction is invoked. *Colorado Central Mining
Company* v. *Turck,* 150 U. S. 138; *In re Jones,* 164 U. S. 691,
693; *Third St. and Suburban Railway Company* v. *Lewis, ante,*
456."

Further, the power of the Circuit Court was limited to the
entry of a decree as ordered by the Court of Appeals, and it
could not introduce new questions into the litigation without
the permission of that court. *Ex parte Dubuque & Pacific
Railroad,* 1 Wall. 69; *In re Sanford Fork & Tool Company,* 160
U. S. 247. Still further, the mere construction of a decree in-

volves no challenge of its validity. *Smithsonian Institution* v. *St. John*, 214 U. S. 19, 29, and cases cited in the opinion.

The motion to dismiss No. 57 must, therefore, be sustained with costs.

With reference to the application for a certiorari, the power of this court cannot be doubted. As said in *Forsyth* v. *Hammond*, 166 U. S. 506, 514.

"We reaffirm in this case the propositions heretofore announced, to wit, that the power of this court in certiorari extends to every case pending in the Circuit Courts of Appeal, and may be exercised at any time during such pendency, provided the case is one which but for this provision of the statute would be finally determined in that court."

On the appeal to the Circuit Court of Appeals the case was there pending for consideration and decree, and, as for reasons heretofore stated, an appeal to this court would not lie, the case can be brought here by certiorari.

The question then is whether the writ of certiorari ought to be granted. That question involves the construction of a prior decree of a United States Circuit Court, affirmed by this court. It is not a question of the payment of money, but of the extent of the use belonging to one railroad company in the tracks, right of way and terminal facilities of another, as well as the rights of access by the one company to industries established along the line of the other. This, in view of the increasing number of industries in a great and growing city like St. Louis, is of constantly enlarging importance, and ought, so far as possible, to be settled. It seems to us that both the private interests of the railroad companies, and of the separate industries and the greater interests of the public call for the granting of the writ of certiorari, and it is, therefore, so ordered.

This brings before us the original decree on the intervention. That decree, and the facts upon which the original controversy arose, as well as those upon which the present dispute rests, will be found fully stated in 29 Fed. Rep. 546; *Joy* v. *St. Louis*,

138 U. S. 1, and 81 C. C. A. 643, *supra*, and need not be repeated. It is sufficient to say that the decree was founded upon contracts to which the railroad companies, or their predecessors, were parties, by which the Wabash Company agreed to "permit, under such reasonable regulations and terms as may be agreed upon, other railroads to use its right of way through the park, and up to the terminus of its road in the city of St. Louis, upon such terms, and for such fair and equitable compensation, to be paid to it therefor, as may be agreed upon by such companies." It provided that the Colorado Company should pay $2,500 a month "for the use of the right of way, and tracks, side tracks, switches, turnouts, turntables and other terminal facilities of the said Wabash, St. Louis and Pacific Railway at and between the north line of Forest Park and Eighteenth street in the city of St. Louis," and that of these properties it should "enjoy the equal use and benefit." It apportioned the expense of maintaining on a wheelage basis this right of way and other property during such joint use.

Two principal questions are presented, each having reference to the existence of the rights granted by the intervention decree. The eastern line of Forest Park is about three miles west of Eighteenth street, and at the time the decree was entered the Wabash Company owned a strip of land varying in width from twenty-eight to over two hundred feet and extending from Eighteenth street to the east line of the park, and also had an easement for the passage of its trains and engines through the park upon a strip of land forty-two feet wide from the east to the north side thereof. The ground owned by the Wabash is not, as stated, of equal width, portions having been obtained by deeds from different owners, some being only twenty-eight feet in width and others extending quite a distance, so as to furnish room for roundhouses and other terminal facilities. Now, it is contended that the only effect of this decree was to give to the Colorado Company the right to use the two continuous tracks from the north line of Forest

Park into the Union station, while, on the other hand, it is contended that it gave to the Colorado Company the equal use and benefit of the entire ground owned by the Wabash and used for its terminal facilities. Both the Circuit Court and the Circuit Court of Appeals sustained the latter construction, and with that conclusion we concur. The terminal facilities, and not simply a right of way over the tracks of the Wabash running to the Union station, were granted by the decree. As said by Circuit Judge Sanborn, delivering the opinion of the Court of Appeals (p. 646):

"The ordinary signification of the term 'right of way,' when used to describe land which a railroad corporation owns or is entitled to use for railroad purposes, is the entire strip or tract it owns or is entitled to use for this purpose, and not any specific or limited part thereof upon which its main track or other specified improvements are located. *Joy* v. *St. Louis*, 138 U. S. 1, 44, 45, 46; *Territory of New Mexico* v. *United States Trust Co.*, 172 U. S. 171, 181–2; 174 U. S. 545, 546; *Chicago & Alton R. Co.* v. *People*, 98 Illinois, 350, 356–7; *Lake Erie & W. R. Co.* v. *Middlecoff*, 150 Illinois, 27, 37 N. E. Rep. 660, 663; *Pfaff* v. *Terre Haute & I. R. Co.*, 108 Indiana, 144, 148, 9 N. E. Rep. 93, 95.

"To one ignorant of the origin and history of the rights of the contending parties and unaware of the persuasive arguments of counsel the reading of this decree would suggest no doubt that it granted the joint use of the entire strip owned by the Wabash Company and of all the railroad facilities thereon between the east line of the park and Eighteenth street. Upon its face there is no ambiguity in its terms. They suggest no limitation or exception, and when the terms of a decree are plain and clear their ordinary meaning and effect may not be lawfully contracted or extended unless it appears with reasonable certainty that such was the purpose of the court; for the legal presumption is that the judge carefully and thoughtfully expressed therein his deliberate intention. The Wabash Company, therefore, assumed no light burden when it essayed to

prove that the court intended by this decree to grant to the Colorado Company the joint use of a strip only thirty feet in width out of the wider strip the Wabash Company owned between the east line of the park and Eighteenth street."

The other matter involves the question of the right of access to industrial establishments which have been built up near to the line of the Wabash road. As might be expected in a growing city like St. Louis, there are now many such establishments, access to which has been obtained by the construction of tracks connecting them with the main tracks of the railway. The use of these connecting tracks, which were constructed under different arrangements with the various establishments, is claimed by the intervenor, thus making itself a close and active competitor with the Wabash Company for their transportation business.

The general conclusion of the Court of Appeals is stated in these words (p. 657):

"The conclusion is that the Colorado Company is entitled to enjoy the joint and equal use of the entire strip of land between the east line of the park and Eighteenth street, which the Wabash owned, or had acquired the right to use when the decree of 1886 was rendered, and of the tracks, side tracks, turnouts, turntables and terminal facilities now thereon. But it is not entitled to the use under that decree of any of the property, industrial or railway facilities of the Wabash Company beyond the limits of that strip. *Union Pacific R. Co.* v. *Mason City & Fort Dodge R. Co.*, 199 U. S. 171."

From the latter part of this conclusion Circuit Judge Hook dissented, and that presents the question now to be considered. We are of opinion that the Circuit Court of Appeals erred, and that the views of Judge Hook are correct. That the matter was considered by the Circuit Court at the time of the original decree is evident from the opinion of the Circuit Judge, in which it was said (29 Fed. Rep. 559):

"The final matter is that of compensation. In this I think

the master erred. He fixed the value of the right of way at a million of dollars; and reported that, in his judgment, the share of the interest on this value and in the expenses of keeping up the track, which the intervenor company should pay, should be fixed upon a wheelage basis. So far as respects the mere matter of keeping up the track, I see no reason to doubt the justice of the rule fixed by the master; but in regard to the interest on the value, I think the intervenor should pay one-half of that, and for these reasons: It is a familiar fact that in a large city like St. Louis, along the track of an important railroad, within the city limits, are built large manufacturing establishments, warehouses and other buildings foi the convenient transaction of business between the carriei on the one hand and the manufacturer and the merchant on the other. Another road coming over the same track not only uses the property, of great value, which the company owner has in the first instance paid for, but also shares in the benefit of access to all these manufactories, warehouses, etc. It thus places itself in competition with the original company for this valuable business. Such competition may operate to diminish the business of the original company, or compel it to lower its rates to preserve the business. In either way it operates to the serious detriment of the original company. The new company comes in as an equal competitor. It shares in all the benefits of this business, and it may share equally. Under those circumstances it seems to me no more than fair that a new company, which crowds itself into an equal access to such benefits and such privileges, should pay an equal share of the interest on the value of the property. Hence I shall sustain the objections of the respondent to the report of the master, so far as concerns the amount of compensation, and I think that the intervenor company must pay one-half the interest on the value and its share of the cost of keeping up the track, determined upon a wheelage basis. In other respects the report of the master will be confirmed."

That is an interpretation of the language of the intervention decree giving the use of the right of way, side tracks, switches, turnouts, turntables and other terminal facilities. It is doubtless true that a connection with these industrial establishments has become a matter of far greater importance than at the time of the decree. If it be said that this has cast an unexpected burden upon the Wabash, it must also be remembered that provision was made for such unexpected changes. As said in the opinion (p. 558):

"An act of the legislature might be passed giving to one company the right to use the tracks of another, and prescribing all the terms and conditions—the details for the use. I take it, an act of the legislature would also be valid which simply declared that one company should have the right to use the tracks of another upon such terms and conditions as the parties might agree upon, or should be prescribed by the courts, and if such a legislative act would have to be adjudged valid and complete, I see no satisfactory reason why courts may not also hold sufficient and valid a mere contract for the right, and, determining the right, also settle and prescribe the terms of the use. It is true that such a decree cannot be executed by the performance of a single act. It is continuous in its operation. It requires the constant exercise of judgment and skill by the officers of the corporation defendant; and therefore, in a qualified sense, it may be true that the case never is ended, but remains a permanent case in the court, performance of whose decree may be the subject of repeated inquiry by proceedings in the nature of contempt. It is also true that in the changing conditions of business the details of the use may require change. The time may come when the respondent's business may demand the entire use of its tracks, and the intervenor's right wholly cease. But other decrees are subject to modification and change, as in decrees for alimony. The courts are not infrequently called upon to modify them by reason of the changed condition of the parties thereto. So, when a decree passes in a case of this kind, it

remains as a permanent determination of the respective rights of the parties, subject only to the further right of either party to apply for a modification upon any changed condition of affairs; and, so far as any matter of supervision of the personal skill and judgment of the officers of the respondent corporation, the contract, in terms, provides that the regulation of the running of trains shall be subject to the control of the officers of the respondent."

See also the opinion of this court in 138 U. S. 1, 47.

The decree of the Circuit Court of December 20, 1907, is therefore modified in accordance with the views we have expressed as to terminal facilities in connection with the industrial establishments now existing near the right of way of the Wabash Company. If that company shall desire it may apply for a valuation of the additional properties of which the equal use and enjoyment is given to the intervenor, and upon that valuation the same per cent shall be paid by the intervenor. The costs, except so far as they have been already taxed, shall be charged against the respondents.