**DEEDS, Exr., Plaintiff, v. DEEDS et, Defendants.**

Probate Court, Montgomery County.

No. 115205.   Decided March 16, 1950.

Landis, Ferguson, Bieser & Greer, Dayton, for plaintiff.
Snyder, Seagrave, Roudebush & Adrion, Cleveland, for Denison University.

**OPINION**

By LOVE, J:

Edith W. Deeds died testate on February 9, 1949.  Her last will and testament executed March 1, 1945 and a codicil executed December 6, 1948 were duly admitted to probate on February 19, 1949.

Item Fourth of the will provides:

"ALL THE REST, RESIDUE AND REMAINDER of my property, real and personal, of every kind whatsoever and wheresoever situated, I give, devise and bequeath to my husband, Edward A. Deeds, or in case he shall not survive me, to my son, Charles Walton Deeds."

Item First of the subsequently-executed codicil provides:

"I give and devise to **DENISON UNIVERSITY,** an aducational corporation, located in Granville, Ohio, for its general uses and purposes, all of the real property owned by me in Montgomery County, Ohio, at the time of my death, including all buildings and other improvements and fixtures thereon and appurtenances thereto, subject to the use and enjoyment of certain property given in the next succeeding paragraphs.
"I give and devise to each of my faithful employees, **GEORGE GETTER, HENRY HURLEY** and **EUGENE JACKSON,** who may be residing on my land in Montgomery County, Ohio, at the time of my death and wish to continue to live thereon, the use and enjoyment of a house, together with the use and enjoyment of certain surrounding land and furniture and furnishings therein as follows:"

A description of each of the gifts to the named employees follows, after which the instrument directs:

"The term of such use and enjoyment shall be ten years after my death or the lifetime of the employee concerned or the period of his occupation of such house, whichever shall be shorter. * * *"

Item Second provides:

"In all respects, except as herein modified by this Codicil, I hereby ratify and confirm the provisions of my said Last Will and Testament dated March 1, 1945."

A petition for a declaratory judgment was filed September 16, 1949 by the executor praying for the direction of the Court as to the rights and interests of the parties; and the matter was submitted on the pleadings, briefs of counsel, and the evidence.
The sole question to be determined may be stated as follows: Does the real estate pass to Denison University, an educational institution, under the codicil which was executed within one year of the death of testatrix?

**Sec. 10504-5 GC,** the so-called "Statute of Mortmain," provides as follows:

"If a testator dies leaving issue of his body, or an adopted child, living, or the lineal descendants of either, and the will of such testator gives, devises or bequeaths the estate of such testator, or any part thereof, to a benevolent, religious, educational or charitable purpose, or to this state or to any other state or country, or to a county, city, village or other corporation, or association in this or any other state or country, or to a person in trust for such purposes, or municipalities, corporations or associations, whether such trust appears on the face of the instrument making such gift, devise or bequest or not; such will as to such gift, devise or bequest, shall be invalid unless it was executed according to law, at least one year prior to the death of the testator."

The English Statutes of Mortmain were never supposed to have been meant to extend to her colonies and were never in force in those colonies of America which became independent states, except by legislative adoption. The English Statutes of Mortmain, if they were ever considered to be in force in the State of Ohio, were repealed by the Act of 1806. See Perin v. Carey, 24 How. (U. S.) 465, 16 L. ed 701; 2 Bogert, Trusts and Trustees (1935), Ch. 17, Section 325, page 1036.

In the United States statutes limiting the powers of one who desires to give to charity are of two distinct types, namely: (1) those concerned with the time of the charitable gift and (2) those involving the amount of such gift. **Sec. 10504-5 GC,** falls within the first category.

The purpose of §10504-5 GC, is to prevent improvident testamentary dispositions to the exclusion of the persons named in the statute. In **Davis v. Davis, 62 Oh St 411, 419,** 57 N. E. 317 (1900), the court states:

"The statute evidently was enacted for the special protection of the children or adopted child of the testator, and their representatives, in the cases provided for, though, as held in **Patton v. Patton, 39 Oh St, 596,** it inures also to the benefit of the collateral heir when the lineal heir survives the testator and then dies."

Also see **Ruple v. Hiram College, 35 Oh Ap 8, 11,** 171 N. E. 417 (Cuyahoga County, 1928).

In speaking of the California statute (one which limited the proscribed bequests to one-third of the estate when testator left heirs), the court said in Re Estate of Dwyer,

159 Cal. 680, 687, 115 Pac. 242 (1911), in words apropos to the Ohio statute, §10504-5 GC:

"The theory of section 1313 is not to prevent charities from receiving testamentary gifts of property. It is not a mortmain statute; not an expression of a policy of the state against the accumulation of vast properties or the centralization of wealth in mortu manu. It was not designed to operate upon the capacity of corporations or institutions or individuals to take charitable testamentary gifts but solely as a limitation on the power of a testator to make them when he had legal heirs. The purpose of the section was remedial; to prevent what was deemed a wrong and injustice to those who should naturally be the recipients of the bounty of a testator—his heirs at law. It was not enacted for the public good or as a matter of state polity, but for the benefit exclusively of those named in it—the heirs at law—and as a protection against hasty and improvident gifts to charity by a testator of his entire estate to the exclusion of those who in the judgment of the legislature had a better claim to his bounty."

The defendant, Charles W. Deeds, son of the testatrix, on September 16, 1949 filed a waiver and disclaimer of all rights given by virtue of §10504-5 GC, as follows:

"The undersigned, CHARLES W. DEEDS, being first duly sworn, says he is the only son and surviving issue of the body of Edith W. Deeds, deceased, that he is of full legal age and fully competent, and that he hereby irrevocably waives and disclaims any and all rights by virtue of §10504-5 GC, with respect to the Will and Codicil of Edith W. Deeds admitted to probate herein on February 19, 1949."

The waiver and disclaimer of Charles W. Deeds directly raises the question for determination as to whether the persons intended to be benefited by the statute: i. e., issue may waive the protection of the statute. The answer to this question depends upon the answer to the following question: Does the statute make the prohibited charitable bequest void or voidable? If such bequest is merely voidable, then the persons intended to be benefited may waive its benefits and thus validate the charitable bequest. If the bequest is void, on the other hand, no act by the persons intended to be benefited will validate it.

Sec. 10504-5 GC, describes the gift to an educational insti-

tution within one year of the death of the testatrix as "invalid." Whether the word "invalid," as used in the statute, shall be construed as void or voidable has not been decided in Ohio. In cases decided by the Supreme Court, the law of the case is found in the syllabus. Various Supreme Court cases have stated in their respective syllabi and in dicta that §10504-5 GC renders the gift void, but in none of the cases examined was it necessary to determine the precise point as to whether the gift was void or voidable under the statute. Consequently, these decisions would not set a precedent which would bind this Court. See **Patton v. Patton,** 39 Oh St 590 (1883); Davis v. Davis, supra, 413; **Cleveland Trust Co. v. White, 134 Oh St 1, 11 O. O. 377, 380 (1938);** Ruple v. Hiram College, supra. Also see **Harrison v. Hillegas, 13 O. O. 523, 526** (Probate Court of Tuscarawas County, 1939).

In **Thomas v. The Trustees of Ohio State University, 70 Oh St 92,** 70 N. E. 896 (1904), the testator left the residue of his estate to Ohio State University by a will executed within one year of his death and provided for a gift over if the residuary bequest should fail or be held void. By a codicil the testator authorized and empowered his daughter to ratify and confirm the residuary bequest to Ohio State and specified that, if the daughter should ratify in accordance with his desires, the gift over should be revoked. The daughter executed an instrument by which she confirmed the will and codicil and conveyed the residuary estate to the University. Isabel Page, the daughter, died after executing the instrument.

In speaking of the instrument executed by the daughter, the Court say at page 111:

"It may be construed as an execution of the power granted in the will or as an original conveyance or both, and it is operative to invest the Board of Trustees of the Ohio State University with a full and perfect title to the property therein described."

The Court held that the recipients of the gift over, the children of the testator's brothers, took nothing under the provisions of the will because the devise over to them was defeated upon the happening of a condition: i. e., the ratification of the devise to the University by the daughter.

The Thomas case does not squarely decide whether the gift was void or voidable; however, a careful analysis of the syllabi and the supporting opinion indicates that in effect the Supreme Court held that the gift was voidable only and not void.

Whether this Court is right or wrong in the analysis of the Thomas case as to the gift to the University being void or voidable, suffice to say (1) that the case does stand for the proposition that a power of appointment, such as executed by the daughter in said case, validated the gift to the University and (2) that the Supreme Court gave consideration to the purpose of Ohio's so-called "Mortmain Statute" and concluded that the statute could be waived and relinquished by those for whom the statute was designed to protect, for at pages 107 and 108 the Court say:

"It is obvious that this statute does not make the act of giving, devising or bequeathing property an illegal act; for the same gift, devise or bequest which is declared to be invalid if the testator shall die within one year from the execution of his will, may become valid if the testator shall live one year or more after making the will. In other words, the devise or bequest may be valid or invalid according to the lapse of time. It is therefore apparent that this statute is intended to operate merely as a limitation upon the testator's power of disposition, for the protection of the heir against improvident wills or wills made under undue influence. Being such a limitation the statute is to be strictly construed. **Theobald et al. v. Fugman et al.,** per Spear, Jr., 64 Oh St, 473, 481; McGlade's Appeal, 99 Pa. St., 339 343; **and being such a limitation and no contrary principle of right or of public policy being involved, the person for whose benefit it is made may waive or relinquish it.**" (Emphasis ours.)

The court in the case of First National Bank of Atlanta et al, Executors, 36 B. T. A. 491 (1937), affirmed 102 Fed. (2d) 129 (1939), involving a deficiency determination in an estate tax, held that the respondent commissioner had erred in disallowing the deduction from the decedent's gross estate of certain charitable bequests. The decedent, a resident of Georgia, executed his will eighty-nine days prior to his death. Section 3851 of the Georgia Code of 1926 provided:

"No person leaving a wife or child or descendants of child, shall, by will, devise more than one-third of his estate to any charitable, religious, educational, or civil institution, to the exclusion of such wife or child; and in all cases the will containing such devise must be executed at least 90 days before the death of the testator, or such devise shall be void."

The widow and daughter of the decedent renounced any and all interests in charitable bequests made by the testator's

will and executed a written instrument assenting to the validity of same and empowering and directing the executors and trustees to carry out the terms of the will with respect thereto. Noting that the Fulton County, Georgia Supreme Court had held the charitable bequests valid and that the Board was bound thereby, the deduction was approved.

Estate of Dudley S. Blossom, 45 B. T. A. 691 (1941) involved the same question as the preceding case. The decedent was an Ohio resident and was survived by his wife and two children. The decedent made specific cash bequests to his wife and two children, followed by cash bequests aggregating five hundred thousand dollars ($500,000.00) to be placed in perpetual trust for various charitable institutions. The will then provided:

"In the event of my death within a year from the date of the execution of my will, I hereby authorize and empower my son, Dudley S. Blossom, Jr., and my daughter, Mary Blossom Gale, or the survivor of them, to ratify and confirm each and every bequest hereinabove made to * * *" (the institutions) "and I desire and request that my said children, or the survivor of them, ratify and confirm each such bequest.

"In the event my said son and daughter, or the survivor of them, shall fail to ratify any or all such bequests, and in the further event that such bequests shall be invalid because of my death within one year * * * I give all such invalid legacies to my wife, Elizabeth B. Blossom, to be hers absolutely."

The testator having died within a year of the date of execution of the will, the children executed an instrument ratifying and confirming the bequests. The Probate Court of Cuyahoga County, in a will construction, held that the ratification and confirmation nullified §10504-5 GC and the gifts were valid. Bound by this, the Board held the Commissioner erred in disallowing the deductions.

The Tax Court, speaking in Estate of William A. Carey, 9 T. C. 1047, 1054 and 1055 (1947), said:

"The statutes of Georgia and Ohio which were involved in the cases of First National Bank of Atlanta v. Commissioner, 102 Fed. (2d) 129, and Estate of Dudley S. Blossom, 45 B. T. A. 691, have been construed by the courts of those states, respectively, to make charitable bequests under a will which comes within the provisions of the particular statutes as voidable rather than void."

The statute concerned in Taylor v. Payne, 154 Fla. 359, 17 So. (2d) 615 (Supreme Court of Florida, En Banc, 1944), Section 20 of the Probate Act of 1933, c. 16103, provided that, if the testator dies leaving issue of his body, or an adopted child, or the lineal descendants of either, or a spouse, and the will bequeaths property to a religious institution, such will as to such bequest shall be invalid unless executed at least six months prior to his death. The testator bequeathed to his widow, for life, any proceeds derived from a certain contract and mortgage, with directions that at her death any balances should become the property of the trustees of a certain church. Judgment dismissing the petition of the trustees, in an action to require the administratrix c. t. a. d. b. n. to turn over the proceeds, was affirmed on the ground the pleading was insufficient in that it failed to allege that the person for whose benefit the statute operates (the surviving spouse) had waived or relinquished its protection; but the court said at page 365:

"* * * it is our view that the fact of the existence of issue of the body of the testator, or adopted children, or lineal descendants of either, or a spouse, does not render a testamentary bequest made to a benevolent, charitable, educational, or religious institution within six months of the death of the testator ipso facto void but voidable only, at the election of the spouse, or children, blood or adopted, or their lineal descendants. The prohibition of the statute not being made in the public interest but only for the prevention of that which the Legislature has regarded as a private wrong, and no contrary principles of right or public policy being involved, those for whose benefit the statute was enacted may waive or relinquish the protection afforded thereby, if they are of the mind to do so, and ratify or confirm a bequest which but for the mere absence of a sufficient period of time between the execution of the will and the death of the testator would be absolutely valid. Page on Wills 2nd Ed. Sec. 31; Folsom, et al., v. Board of Trustees Ohio State University, 210 Ill. 404, 71 N. E. 384; Thomas v. Board Trustees, 70 Oh St 92, 70 N. E. 896; Trustees of Amherst College v. Ritch, 151 N. Y. 282, 335, 45 N. E. 876, 891, 37 L. R. A. 305; Re Hills' Estate, 264 N. Y. 349, 191 N. E. 12, 93 A. L. R. 1380; Karolusson v. Paonessa, 207 Iowa 127, 222 N. W. 431."

**37 O. Jur., Statutes, Section 464, page 791,** reads as follows:

"Persons may expressly or impliedly waive statutory pro-

visions intended for their benefit, but provisions may not be waived where they are intended for the benefit of others, or where public policy or public right requires their observance."

56 Am. Jur., Waiver, Section 4, page 105, discusses the problem as follows:

"The doctrine of waiver, from its nature, applies ordinarily to all rights or privileges to which a person is legally entitled, provided such rights or privileges belong to the individual and are intended solely for his benefit. A waiver is not, however, allowed to operate so as to infringe upon the rights of others, or to transgress public policy or morals."

Section 7 of the same work states:

"While one cannot waive a public obligation created by statute, he may waive a statutory requirement the purpose of which is to confer a private right or benefit, such as, by way of illustration, the right of an innkeeper under a statute limiting his liability for loss of the effects of his guests, the right of a creditor to written notice from the surety to sue the principal in order to discharge the surety, creditors' right of recourse to the liability of stockholders for payment of the corporate debts, and the right of stockholders to notice of corporate meetings. Statutory rights may be waived or surrendered, in whole or in part, by the party to whom or for whose benefit they are given, if he does not thereby destroy the rights and benefits conferred upon or flowing to another in or from such statute or other legal or equitable source. * * * Even when a statute in so many words declares a transaction 'void' for want of certain forms, the party for whose protection the requirement is made often may waive it, 'void' being held to mean only voidable at the party's choice."

Cited: United States v. New York & P. R. S. S. Co., 239 U. S. 88, 60 L. ed. 161, 36 S. Ct. 41; Black Diamond Coal Min. Co. v. Rankin, 170 Tenn. 651, 98 S. W. (2d) 311, citing R. C. L.
In Re Hills' Will, 264 N. Y. 349, 191 N. E. 12, 93 A. L. R. 1380 (1934), the court, after declaring that under New York law the persons who had a right to contest the will of a testator, by which more than the statutory portion was given to charity, might waive or retain that right at their election, explained the existence of such right on the broad principle that, wherever a right is given for the protection of particular individuals

only and not for the protection of the general public, the individual upon whom the right has been conferred, be it by law or by contract, has the choice to assert such right or to waive it according to his free will. The court also cited Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305 (1897).

The court in Folsom v. Board of Trustees of Ohio State University, 210 Ill. 404, 71 N. E. 384 (1904), held that the privileged persons within the Ohio statute may waive the protection of the statute and ratify and confirm a devise or bequest which, but for such waiver, would be invalid.

This Court is of the opinion, therefore, that the waiver of the benefited person's right may take the form of a testamentarily-conferred power of appointment (as in the Thomas case), or it may be in the form of a quit-claim deed, or in any other manner which the benefited person may choose to relinquish his statutorily-given right. Charles Deeds having waived protection of the statute, the gift to Denison University is valid.

This case may be decided on another ground as if Charles Deeds had not executed a waiver or disclaimer. The Court is of the opinion that the purpose of §10504-5 GC, is to protect those near relatives of a testator who are naturally dependent upon him for their support. That is, it is intended that the property composing the invalidated gift will go to the persons named in the statute who are disappointed by the will or codicil. This is the benefit conferred by the statute. But no benefit can be conferred by the statute unless there is a residuary clause in favor of the class named in the statute or unless the class named can take by intestacy; for, otherwise, the purpose in invalidating the gift is not served. If the property passes under Item Fourth of the will as residuary property to Colonel Deeds, the purpose of §10504-5 GC in invalidating a gift to charity—to prevent imposition upon the donor and to protect her child against unwise generosity—is not served for the son does not benefit by virtue of the invalidation of the charitable gift.

In Ruple v. Hiram College, supra, the will of the testator set up a trust fund of the residue for the testator's wife and daughter for life with the remainder over to charity plus a ten thousand dollar ($10,000.00) gift to a legatee. A codicil subsequently revoked the ten thousand dollar ($10,000.00) bequest. In holding that the codicil, which was executed within one year of the testator's death and which revoked the bequest and thereby increased the residue which went to the charities, was not void under the statute, the court said at pages 12 and 13:

"The codicil which plaintiff claims the right to avoid in this case, while made within one year prior to the death of the testator, and while made by a testator who died leaving issue of his body, did not in any way affect the interest of any descendant of the testator. If the original will had stood without the codicil, the $10,000 in controversy would have gone to Mr. Ruple," (the plaintiff) "who is not of the issue of the testator. With the codicil operating, the $10,000 would pass with the residuum to the two defendants herein." (the charities) "The interest of the testator's descendants was unaffected one way or the other by the codicil. **It follows that the purpose for which §10504 GC was enacted would not be served by holding that the codicil fails because it was made within a year of the testator's death.** Not only does the spirit of the section referred to fail to condemn the codicil, but the letter of the statute likewise fails so to do." (Emphasis ours.)

And, since §10504-5 GC is not a mortmain statute: i. e., a prohibition against the holding of property by charitable corporations, there is no reason to invoke the protection of the statute when the statutory benefit is impossible of conferment. Only the persons named in the statute can invoke its protection, and such a statute is not invoked unless the declared purpose of the statute will be served.

In St. John v. Andrews Institute, 191 N. Y. 254, 83 N. E. 981 (1908), 14 Ann. Cas. 708, writ of error dismissed in 214 U. S. 19, 53 L. ed. 892, 29 S. Ct. 601, it was held that the statute does not become operative on a will until the date of the death of the testator and consequently **if, at the time of his death, none of the protected persons survive him, the gift created is valid although the will was executed within the prescribed period of time.** See also Ruple v. Hiram College, supra, page 11.

The statute then is not operative unless persons therein named survive the testator. Again, the statute is not operative unless the declared purpose of the statute is served. When the person named in the statute is not benefited by the invalidation of the proscribed gift, the effect is the same as if there had been no statute in the first place and the gift to the benevolent, religious, educational, or charitable institution is valid. Therefore, in the case at bar, it was not necessary for Charles Deeds to waive or relinquish the benefits of the statute because he had nothing to relinquish.

The Court therefore finds that the facts alleged in the petition are true; that the codicil of said decedent is not

invalidated by §10504-5 GC; that said codicil should be given full legal effect according to its terms; that under and by virtue of the terms of said codicil the decedent's real estate located in Montgomery County, Ohio passes to the defendant Denison University, subject only to the rights of use and enjoyment therein devised to defendants George Getter, Henry Hurley, and Eugene Jackson; and the executor is directed to proceed accordingly.

Entry in accordance with this opinion.

Costs to the estate of Edith W. Deeds.