## Kitchen Lumber Company v. Moses et al.

(Decided February 9, 1932.)

STEPHENS & STEELY for appellant.

J. B. JOHNSON for appellee.

Opinion of the Court by Stanley, Commissioner—Denying appeals in part, granting in part, and reversing in part.

·The appellant, Kitchen Lumber Company, owned a large body of timber in Whitley and adjoining counties, and, in order to get it out, secured rights of way for a logging railroad over the property of a number of citizens. In the Whitley quarterly court, Jake Moses and five others filed separate suits, alike in form, asking judgments for a year's rental or consideration, and praying for a reformation of their several contracts or conveyances. The money judgment sought in three cases was $50 each, in two of them, $75 each, and in one of them $100. In some of the cases small claims were asserted for damages to fences and other property not comprehended by the easements, but those claims have been eliminated. The cases were transferred to the circuit court, and were there tried together before a jury. At the conclusion of the evidence, the court withdrew them from the consideration of the jury, and adjudged the parties were entitled to the reformation of their several contracts and the money judgments asked for. Upon one record appeals have been prayed in this court from each of the six judgments.

Before considering the motions to dismiss the appeals for want of jurisdiction, we turn our attention to the merits of the three cases in which we conclude the court has jurisdiction.

The several contracts or grants were upon similar printed forms with blanks filled in by a typewriter, except in two instances the interlineations which gave rise to this litigation were made by a pen in the presence of the grantors. The parties had previously given options for the grants. We skeletonize one of the contracts thus:

> "In consideration of the sum of $75, receipt of which is acknowledged, paid and to be paid as follows: At the rate of $75 per year *for actual time used.* We, Jake Moses, Angeline Moses, his wife, have this day bargained and sold, and by these presents do transfer, grant and convey unto Kitchen Lumber Company . . . a right of way for a narrow gauge railroad on, over, through and across our lands . . . for the purpose of . . . transporting timber and timber products, and . . . sup-

plies in the course of said Kitchen Lumber Company's timber operations, for a term of four years from the date hereof," etc.

It was pleaded and endeavored to be proved that the italicized portion was inserted through mistake on the part of the grantor and misrepresentation or fraud on the part of the grantee, and should therefore be eliminated. If so stricken out, the contract bound the lumber company, in one particular case to pay $75 a year for four years, or a total consideration of $300. Otherwise, it was obliged to pay the grantor the proportional rental for only such time as the right of way was occupied. As recited in the document, $75 was paid when the contract was signed and acknowledged. The other cases differ only in respect to the amount. It appears that the railroad was not laid until after the expiration of the first year and the land had been occupied only a few months when the suits were filed; the plaintiffs claiming advance rent for the second year. It is said in the brief that the railroad was removed before the four years expired; but the time of occupancy is not shown in the record; nor does it seem material.

The evidence tending to prove plaintiffs' cases was as follows:

Jake Moses testified that, when the contract was submitted to him by Quick, the agent of the company, he read it and objected to signing it because of the words "for actual time used," since he had agreed to lease the land for $75 a year "for what time they might hold the contract." He says Quick stated that the term did not mean what he thought it did, and further said, "That only means to release the Kitchen Lumber Company paying for this full year—this full four years of time in case they get through and get out of here." He asked Quick when the next payment would be due, and was told that he would get another $75 "12 months from the date." He concluded his evidence with the statement that he relied upon Quick's representations, and that the company's present interpretation of the contract does not comply with his understanding or agreement. His son, Eddie Moses, corroborates him as to the promise that he would receive another $75 payment one year from that date. In answer to a suggestive question of plaintiffs' counsel, he testified that Quick explained the term "for

actual time'' used to mean ''that the company could be relieved from liability or from payment in the future in the event they completed the job up there before the four years ended.'' And further, on cross-examination, ''anyway he said for 'actual time used' was used to keep from holding them responsible for the full four years.'' Plaintiff's daughter, who was also present when the contract was signed, testified to the same effect.

As to W. C. or Cassie Centers' contract, he testified that he did not read it, but that Quick read it to him, and, upon inquiry as to when the next payment would be made, Quick stated that it would be one year from that date. If anything was said about the phrase ''for actual time used,'' he did not hear it, and he would not have signed a contract had he known it was in there or that it meant for any part of a year.

There was a contract with I. M. Moses, who died before the trial. Mrs. Moses testified that ''they'' told her husband that ''on the 20th day of December you get another pay day.'' Miller, general manager of the company, she stated, was present, and explained that the company would pay for the time the track stood there; that they could hold the land as long as four years, if the track stayed on the ground that long, and were to pay as long as the track did remain. She understood the contract to mean that, if the railroad had not been constructed, the company would have owed nothing. Norman Moses, a son, and Eddie Moses, who were also present, testified to the same effect. The contract was read over to Mr. Moses, and he signed it without any explanation of its terms being made. They understood it was to pay for the time the company was on the land, but that the company was on there at the time of the trial and had not paid for the second year.

George Meadors, a deputy county court clerk, accompanied the agent of the lumber company, and took the acknowledgments of these grantors. Introduced by the plaintiffs, he testified that Quick told each of the parties that he would be entitled to another payment at the expiration of one year, and that the company would pay each year as long as it used the land. Quick explained to everyone of them that the company was not bound for the full four years.

It will be seen that the plaintiffs failed to make out a case. They proved that the agent of the company repre-

sented to them that the contract meant just what it is now claiming it means, with the exception that he had told them that they would receive another annual rental one year from that date. However, we may note the evidence introduced on this point by the defendant. Its superintendent testified to the uniformity of these contracts, of which there were a great many, and that the company has at all times been willing to pay the stipulated consideration for the use of the land. Quick, who was not then connected with the company, testified that he obtained the execution of the several contracts; that, when the grantor did not himself read it, either he or Meadors read it to him, and, if an explanation was asked, it was given to the effect that the company would not pay for the use of the land until it entered upon it, since the owner had its full use until that time; that the provision in the contract for the payment of damages to growing crops on the right of way was inserted in order that the owner might be compensated in case they took possession while it was being so used by him. The payment in advance was made to enable the company to take possession at any time needed without having to look up the owner. The company anticipated getting out the timber within one year, but placed the four-year limit in the contract because of the possibility of delay by reason of floods, accidents, etc. He explained to the parties that the company would pay the rental from the time its engineers drove the stakes for the railroad until it was removed.

It is elementary law that the courts will not reform a contract duly executed without clear and convincing proof of a mutual mistake of the parties or a mistake of one of them and fraud or inequitable conduct of the other, and establishing a right to change the instrument so as to have it express the true intention of the parties and the agreement they had actually made. Without referring to numerous precedents, it seems sufficient to say that the evidence fell far short of meeting the established tests and did not authorize a reformation of any of the contracts so as to strike out the provision to the effect that the company was to pay only for the time the plaintiffs' property was occupied by it and at the stipulated proportional rent.

It may be observed that in the other three cases in which the rental was at the rate of $50 per annum the

evidence was of the same character and the judgments rendered were equally erroneous.

The jurisdiction of this court is limited in civil actions to appeals involving strictly money judgments where the amount is $200 or more, exclusive of interest and costs. Section 950-1, Statutes. It has often been declared that judgments of several plaintiffs having separate claims or distinct interests cannot be added for the purpose of giving the court jurisdiction, even though they be united in one suit, or, as here, where several suits were tried together. Ford v. Consolidated Grocery Co., 229 Ky. 510, 17 S. W. (2d) 448. Annotations to section 950-1 of the Statutes. It cannot be said that these appeals involve an easement in land, for, while that is the subject-matter of the suits, it is not in issue. Neither party denies that the easement granted was for four years. The question relates to the consideration for that easement. As stated, the appellees contend the true consideration was an annual payment in advance for four years, in any event. The appellant contends that, while the consideration may have amounted to that much as a maximum, it was required to pay only for the time it should choose to exercise its rights thus granted or for the time the easement was actually used, with the sums calculated upon the basis stated in the contract. The relief sought was money through reformation of the contract. The value of the reformation was measured by the amount of money recoverable after reformation. The company had paid in each instance a sum sufficient to compensate the owner of the land for one year's use, and has made no effort to recover any part of it. Therefore the most that the $50 a year men could possibly recover would be $150 each; the $75 a year men, $225; and the $100 a year man, $300. They are the amounts involved on the appeals. A reformation of the contract in each instance was but incidental or ancillary to the principal object of the action, which was to recover judgment for a sum of money. The balance which might have been collected, had it been reformed, determines the whole amount in contest.

In Sackett v. Creech, 142 Ky. 790, 135 S. W. 273, an appeal was dismissed which involved only a right to an injunction to prevent the collection of a replevin bond for $175.20, because the main purpose of the suit was to enable the appellant to obtain that sum of money. That is

like the cases at bar. See, also, Moreland v. Fryar, 146 Ky. 141, 142 S. W. 218; Thompson Straight Whiskey Co. v. Commonwealth, 157 Ky. 393, 163 S. W. 201; H. Krish Co. v. Rigsby (Ky.), 121 S. W. 479. Such cases may be distinguished from one like Kentucky River Hardwood Co. v. Noble, 168 Ky. 773, 182 S. W. 941, in which an appeal was entertained in a suit to enjoin the levy of an execution for $75, for which there was no judgment, upon the ground that the action was not for a money judgment, but was seeking the only remedy available. It was held that appeals of that kind are not comprehended by the limitations of section 950-1 et seq. of the Statutes. See, also, Day v. Bauer, 215 Ky. 335, 285 S. W. 207; American Car & Foundry Co. v. James, 139 Ky. 167, 129 S. W. 564. The legal effect and not the form of the judgment must be regarded in determining the matter of jurisdiction.

It follows, therefore, that the appeals from the judgments in favor of Harlan Moses, Jim Moses, and Ernest Centers must be denied for lack of jurisdiction. See Rosa v. Nava, 235 Ky. 574, 31 S. W. (2d) 910, 913. The appeals from the judgments in favor of the appellees Jake Moses, W. C. Centers, and Comy Moses et al. are granted, and the three respective judgments are reversed, with directions to deny the prayers for reformation of the contracts and for further proceedings with respect to amount of rentals consistent with this opinion.