## Toms et al. v. Holmes.

May 7, 1943.

Richard L. Garnett for appellants.

J. R. White for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Ida Holmes, filed this action in the Barren circuit court against appellants and defendants below, Mack Toms and John King, styling her petition as "Petition in Equity"; but disclosing facts therein, showing her cause of action, to be an undisputed ordinary one triable by a jury. The parties practiced, and the court decided the controversy as if it were one properly brought in equity, and it will be so treated on this appeal.

Plaintiff alleged that she was the owner of "about eleven acres of land" which she bought in May, 1939, from Crit Edmunds and wife—it being taken from a larger tract owned by her vendors. The description of the portion conveyed to plaintiff is thus phrased in her deed: "About eleven acres of land off his farm and is that part of the farm running with Dixie Highway 31 W, beginning at a corner of John Morris land and running North to Mill road; thence Northeasterly to a point above new house and including the new house, and all the outbuildings located thereon; thence S. E. with line of Crit Edmunds to the Dixie Highway 31 W; thence with Dixie Highway 31 W; thence with Dixie Highway 31 W to the beginning. A lane or a right of way to the

pond of said parcel of land is reserved as long as the said Crit Edmunds owns the remaining part of this farm.''

She further alleged that on October 19, 1939, her vendors (Edmunds and wife) conveyed the remainder of their farm to the appellant, M. C. Toms, and in that deed the description of such remainder, as plaintiff alleged, lapped over on the tract she had purchased from Edmunds in the preceding May to the extent of 2.9 acres, which she sought to recover from defendants Toms and John King, to the latter of whom Toms had conveyed his land after receiving his deed from Edmunds and wife. Plaintiff alleged in her petition that the small quantity of land—the possession of which she had been so deprived—was reasonably worth the sum of $400, and she prayed that if she should not be adjudged the owner of the land that she then recover judgment against defendants for its value as alleged by her.

Defendants answered denying plaintiff's title, and asserting title in King, and made their answer a cross petition against Edmunds who responded with a pleading also controverting the material allegations of plaintiff's petition and alleging ownership in the small parcel of controverted land in King which he had obtained from Toms, who in turn obtained it from Edmunds. Evidence was taken by depositions, and on final submission the court, after passing on some exceptions filed to depositions then rendered this judgment: ''The Court finds that the defendants, John King and Mack Toms, are indebted to the plaintiff, Ida Holmes, in the sum of $120.00 and judgment is now awarded to the plaintiff against John King and Mack Toms in said sum, to all of which ruling and judgment the defendants object and except and pray an appeal to the Court of Appeals which is granted according to law.'' This appeal is prosecuted therefrom.

The case possesses peculiarities rarely met with, both in its practice and the final judgment. It is one, as we have seen, of strictly ordinary cognizance, being exclusively one in ejectment claiming title to the small controverted portion of 2.9 acres of land, but coupled with the consent of plaintiff to be satisfied with a judgment against defendants for what she claimed was the value of that small area. Therefore, it will be observed that

the action is not one to reform a deed so as to embrace the controverted amount of land, nor is it an action against the vendor to recover for shortage in the amount of land agreed to be' conveyed by him to plaintiff. Neither was it alleged that the purchase was made ''by the acre'' at an agreed price per acre so that the value of the shortage, if any, could be readily fixed.

The judgment is peculiar in that it obligated both Toms and his vendee, King, to pay the value of the alleged shortage, when neither of them had ever conveyed to plaintiff one inch of land—it being clear that if there was a shortage the one accountable therefor to plaintiff was her vendor, Edmunds. The judgment, therefore, in its last analysis, compelled both Toms and King to repurchase the alleged shortage at the price fixed by plaintiff's proof, after they had previously purchased it from Edmunds, if their deed from him embraced the controverted portions.

At the threshold the question of our jurisdiction arises and which is discussed in brief of appellants, though no motion is made by appellee to dismiss the appeal. However, the failure to make such a motion would not confer jurisdiction on this court of the appeal if under the law it did not possess it, since consent cannot confer jurisdiction not possessed. The only issue made by the pleadings was the ownership of the contested amount of land, it being claimed by plaintiff in her petition, and denied by defendants in their pleading, in which they also claim that defendant, King, was its owner, he obtaining title thereto in the way and manner above indicated. The fact that plaintiff expressed her willingness to accept a money judgment for the value of the land did not change the nature of the action, or the issue in litigation, since the court in rendering its judgment· could not possibly have done so, except upon a finding that plaintiff owned the title to the land in dispute.

The text in 30 Am. Jur. 834, section 31, in treating the title ''Judgments'' after stating that they should be construed ''like other written instruments,'' continues by saying: ''In applying this rule, effect must be given to that which is unavoidably and necessarily implied in a judgment, as well as to that which is expressed in the most appropriate language. Such construction should be

given to a judgment as will give force and effect to every word of it, if possible, and make it as a whole consistent, effective, and reasonable. The issues involved in the action are also important factors in determining what was intended by the judgment." Reading from the syllabi—which the opinion sustains—we held in the case of Hays v. Madison County, 274 Ky. 116, 118 S. W. (2d) 197, that "A court's judgment must be read and interpreted in the light of what was before it." In the case of Kitchen Lumber Company v. Moses, 242 Ky. 505, 46 S. W. (2d) 791, the syllabi—also correctly stating the holding of the court in the opinion—says: "Legal effect and not form of judgment determines question of jurisdiction." Likewise in the case of Oglesby v. Prudential Insurance Company of America, 259 Ky. 620, 82 S. W. (2d) 824, 826, we held: "that the pleadings in the cause may be looked to in aid of the judgment, and that the certainty of the latter may be obtained from consulting preceding parts of the record containing the necessary data therefor." A number of cases are cited in the opinions referred to sustaining the same principle and many others will be found listed in section 526, Volume 12, of West's Kentucky Digest, on the subject of "Judgments."

Moreover, the rule applicable to construction of judgments is substantially the same, with reference to what was determined therein, as that of the verdict of a jury. The case of Jackson v. Hill, 22 Ky. Law Rep. 563, 58 S. W. 434, 435, was an ejectment action in which plaintiff claimed title to land which he sought to recover from defendants, and which was controverted by the latter and by asserting title in themselves. The petition sought damages for the alleged wrongful trespass and the case was tried by a jury which returned this verdict: "We, the jury, find for the plaintiffs, and assess the damage at twenty dollars." Defendants appealed to this court where plaintiff, and appellee in this court, raised the question of our jurisdiction, since the verdict of the jury—as contended—was for the recovery of money in only the amount of $20; but we held to the contrary, and said (quoting from Proffatt on Jury Trial, section 418): "A general verdict for the plaintiff is applicable to every issue well pleaded in his declaration. One general verdict may be a sufficient finding upon several issues when all the issues must necessarily be passed upon in order to the finding of such verdict." From the same

authority we also quoted: "A general verdict 'for the plaintiff' in ejectment was held to find both issues in his favor, viz., that plaintiff was the absolute owner in fee simple, and that defendant unlawfully withheld the possession from him." In the Amer. & Eng. Encpd. of Law, volume 28, page 355 the rule is thus stated: 'A verdict in terms "We, the jury, find for the plaintiff," must be understood as a finding by the jury upon the issues joined between the parties, and even though there were several distinct issues made by the pleadings such a verdict would be regarded as a substantial finding upon all the issues.' "

If the verdict of a jury on contested issues of fact may be so interpreted when it is obscure, by consulting the entire record, and pleadings forming the issue for submission, it is difficult to see why the same rule might not be resorted to for the purpose of ascertaining the finding of factual issues by a judge who, by consent or otherwise, takes the place of a jury in determining such issues. We, therefore, conclude that, since the only issue formed by the pleadings was the title to the land in contest we have jurisdiction of this appeal under the provisions of section 21.060, KRS, section 950-1 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes, and which brings us to the merits of the case.

The testimony—without reciting it in detail—clearly preponderates in sustaining the contention of defendants, and that of Edmunds, that plaintiff obtained by her deed from her vendor the area that she agreed to take, and which was conveyed to her. In other words, she purchased the land that was so conveyed, in gross, but which was supposed to contain "about eleven acres." It will be observed that one call in her deed says: "thence S. E. with line of Crit Edmunds to the Dixie Highway 31 W." Preparatory to the making of the deed to the portion purchased by plaintiff the parties went upon the land and viewed it and made some measurements. They stepped off or measured with a rope, or by some other means, and stopped at the point where the above inserted call reached Highway 31 W., which was temporarily marked by a corn stalk woven into the wire fence enclosing the entire Edmunds farm. Later a rock was placed at that point, and after obtaining her deed plaintiff ran a fence along that line north from 31 W., the entire Edmunds farm being north of that highway. When

Toms purchased the balance of the Edmunds farm from the latter, his deed included all of the land up to the fence which had been constructed by plaintiff, but which she claimed was only a temporary one so as to enable her to pasture an enclosed corn field on the land she purchased, and to prevent her stock from entering upon the adjoining and unconveyed portion of the Edmunds farm upon which there was ungathered growing corn, and that a later survey was to be made allotting to her "about eleven acres." That agreement was denied by Edmunds and likewise disproven by other testimony introduced. But, conceding plaintiff to be correct in that contention neither Toms, as subsequent purchaser, nor his later vendee, John King, would be bound by it, unless they possessed notice of such understanding before their respective interests were acquired. There is absolutely no proof of any such knowledge on their part, but on the contrary, it shows that neither of them knew of such claim by plaintiff, although Toms—after obtaining his deed—heard of such claims and had conversations with plaintiff about it. We conclude, however, that no such verbal agreement was entered into, although if it had been it would not affect the right of Toms and King as innocent purchasers.

Although this case was actually an ordinary one, yet after being brought, tried and decided as an equity one without objection, it will be treated and disposed of in this court as if it were in truth an equity action. See cases cited in notes to Section 10 of our Civil Code of Practice.

We, therefore, possess the authority to reverse fact-findings by the court when we entertain more than a doubt as to their correctness. Being clearly of the opinion that the necessarily implied findings that plaintiff, and not defendant King was the owner of the land in controversy are unsupported by the preponderance of the testimony, it follows that the judgment should be and it is reversed, with directions to dismiss the petition.