[Criminal No. 884. Filed November 27, 1939.]

[96 Pac. (2d) 281.]

ROBERT ANDERSON, Appellant, v. THE STATE OF ARIZONA, Respondent.

Mr. C. H. Young, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Respondent.

LOCKWOOD, J.—Robert Anderson, hereinafter called defendant, was accused by the county attorney of Maricopa county of robbery. He was tried to a jury which returned a verdict of guilty, and before sentence was pronounced he filed a motion for new trial, alleging that one of the jurors was not qualified to sit in the case. Evidence on this motion was taken by the court, and the motion was overruled, and on June 5th, defendant and his counsel being present, sentence was pronounced orally that defendant serve a term of not less than five, nor more than six, years in the state prison, and the action of the court was entered in the minutes in the following language:

"This being the time for passing sentence on the defendant said defendant is asked if he has anything to say or legal cause to show why sentence should not be pronounced at this time, counsel for the defendant makes no further statement and defendant makes no statement. No sufficient cause appearing why sentence should not be pronounced at this time, it is the

judgment of the court that you are guilty of the crime of Robbery, a felony and that you shall be punished therefor by imprisonment in the State Penitentiary at Florence, Arizona, for a period of not less than 5 years nor more than 6 years from date of incarceration therein. Counsel for defendant gives notice of appeal in open court.''

On June 6th a written judgment and commitment in the form generally used by the superior court of Maricopa county was signed by the trial judge and filed with the clerk.

The appeal in this case presents two assignments of error. The first is that the judgment violated rule 7 of the Uniform Rules of the Superior Courts, in that the formal written judgment was not filed upon the same date that judgment was rendered in open court, as required by rule 7, *supra*.

We think this objection is without merit. In the first place, a reading of rule 7 in its entirety will show clearly that it applies only to judgments in civil actions, and not to those in criminal proceedings. Further than that, we have held that when the legislature speaks on a matter of procedure, the statute supersedes any rule of court with which it is in conflict, except in so far as it unreasonably limits the court in the performance of its constitutional duty. *De Camp v. Central Arizona Light & Power Co.,* 47 Ariz. 517, 57 Pac. (2d) 311. An examination of sections 5104, 5111, 5115, Revised Code of 1928, is convincing that the judgment in a criminal case must be rendered in open court and entered upon the minutes of the court, and that no other written judgment is required. A certified copy of the minute entry is the only instrument needed to justify the proper authorities of the state prison in receiving and holding a defendant until his sentence has expired or he is otherwise released according to law.

The second assignment raises a more serious matter. After the jury had returned its verdict, it was for the first time discovered by defendant that one of the jurors named James had some months previously been formally declared an incompetent, under section 4141, Revised Code of 1928, which reads as follows:

"Guardian of incompetent persons; petition and notice. When it is represented to the superior court, upon verified petition of any relative or friend, that any person is insane, or is mentally incompetent to manage his property, the court shall cause a notice to be given to the supposed insane or incompetent person of the time and place of hearing the petition, not less than five days before the time so appointed, and such person, if able to attend, must be produced on the hearing."

A guardian of the estate of the incompetent was appointed and duly qualified, and this order had never been revoked nor set aside, nor had the juror been restored to competency at the time of the trial.

At the hearing on the motion for new trial, the county attorney called the Honorable J. C. NILES, Judge of the Superior Court of Maricopa County, who had made the order declaring the juror incompetent, together with the juror and his wife, and they testified the circumstances under which the order was entered were as follows: The juror was a Spanish war veteran, drawing a pension from the federal government of $60 per month, and he and his wife, at the time of the alleged incompetency, were running a service station at Morristown. It was the habit of the juror, whenever he received his pension check, to neglect his business and use the money for the purpose of purchasing intoxicating liquor for himself until such time as it was exhausted. He realized his weakness and that it was gradually ruining his business and dissipating his income. He and his wife, therefore, agreed, upon legal advice, that he should be declared

incompetent to manage his property and she should be appointed guardian of his estate, so that the pension check would be issued to her and she would see he did not use the proceeds in the purchase of liquor. The evidence was to the effect that, except when under the influence of liquor, he was of sound mind and ordinary intelligence, and there was nothing to show that at the time of the trial his condition was not normal. All of this evidence was admitted over the strenuous objections of counsel for the defendant that it was an attempt to impeach a judgment collaterally. The court, after hearing the testimony, overruled the motion for new trial and proceeded to sentence as above.

Under our statute, among the other qualifications of a juror are that he shall be "sober and intelligent, of sound mind, and good moral character". Sec. 1905, Revised Code of 1928.

It is the contention of defendant that the judgment declaring the juror incompetent must be taken as declaring him to be of unsound mind and so incapacitated from service as a juror until it is set aside in the statutory manner, and that it was not open to any collateral oral explanation of its terms. Section 4144, Revised Code of 1928, defines the term "incompetent" as used in connection with the statutory proceeding under section 4141, *supra*, as follows:

"Terms defined. The phrase 'incompetent,' 'mentally incompetent,' and 'incapable,' as used herein, shall mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

██ Upon an examination of these two sections it will be seen that there is a very careful distinction

made between a guardianship arising from insanity and one based on incompetency. The latter class of guardianship is evidently that which, under the common law, was known as the guardianship of drunkards or spendthrifts, and the statute is a reenactment of the principles already existing under the common law. The difference between the two classes of guardianship and their effect upon the ward is pointed out in the case of *Manson* v. *Felton,* 13. Pick. (Mass.) 206, in the following language:

" . . . The distinction between cases of lunatics and of spendthrifts, in this respect, is obvious. Lunacy or distraction, independent of any positive enactment, is itself a disability to contract, arising from want of capacity. In the case of a spendthrift there is no natural or mental incapacity, and therefore, the incapacity by force of the statute itself takes effect only from the appointment of the guardian, . . . . "

A man may, therefore, be declared by the court to be incompetent to handle his own property because he spends money too profusely or improvidently, or he may so habitually drink to intoxication that it is necessary, for the protection of his property, his family and his own person, that a guardian be appointed either of the person, or of the property, or of both, but, as was said in *Manson* v. *Felton, supra,* the disability is not a lack of mental capacity in either case, in the ordinary sense of the word. It is well known that there are many men, generally perfectly normal, who at times are not capable of handling their finances in a proper manner during periodic spells of intoxication, while there are others who, although not indulging to excess in intoxicating liquor, dissipate their funds through idleness, gambling or debauchery of other kinds, but who would never be said to be of unsound mind as the term is usually understood. A person may, therefore, be declared incompetent to

handle his financial affairs for many different reasons, some of which may indicate general mental incapacity, such as extreme old age resulting in senility, or physical disease which is in a certain stage, or the declaration may be based on many other causes which do not imply the ward is of unsound mind so that he is incapable of passing properly upon questions submitted to him as a juror. Whether a declaration of incompetency, therefore, disqualifies a juror on the ground that he is of unsound mind depends upon the cause which led to the guardianship proceedings.

■ It does not appear on the face of the decree of incompetency in the present case what was the cause of the order declaring the juror incompetent, and the state attempted to show by the parol testimony of the judge who made the order and the witnesses on whose testimony it was made what that cause was. It was urged by defendant that this was an attempt to attack a judgment collaterally. Of course this cannot be done, but we know of no rule which prevents a judgment, incomplete or ambiguous upon its face, from being explained by parol evidence. In the case of *Watson* v. *Lawson,* 166 Cal. 235, 135 Pac. 961, 963, the court said:

" . . . In applying a judgment, 'if the language be in any degree uncertain, we may properly refer to the circumstances surrounding the making of the order or judgment, to the condition of the cause in which it was entered.' *Ex parte Ambrose,* 72 Cal. [398] 401, 14 Pac. [33] 35; *Treat* v. *Laforge,* 15 Cal. 41; *Etter* v. *Hughes* [5 Cal. Unrep. 148], 41 Pac. 790. A judgment 'must be construed with reference to the law regulating the rights of the parties.' *Burnett* v. *Whitesides,* 15 Cal. [35] 37. Where only one count of the complaint is sufficient to support a judgment, it will be presumed, on appeal, that it was based solely on that count. *Nielsen* v. *Provident, etc., Soc.,* 139 Cal. [332] 339, 73 Pac. 168, 96 Am. St. Rep. 146. 'In case of doubt regarding the signification of a judgment, or

any part thereof, the whole record may be examined for the purpose of removing the doubt.' 1 Freeman on Judgments, § 45. 'When it admits of two constructions, that one will be adopted that is consonant with the judgment that should have been rendered on the facts and the law of the case.' 1 Black on Judgments, §§ 3, 123; *Peniston* v. *Somers,* 15 La. Ann. [679] 680.''

See also *North Boulder Farmers' Ditch Co.* v. *Leggett Ditch & Reservoir Co.,* 63 Colo. 522, 168 Pac. 742.

The parol evidence admitted by the court in no way impeached or modified the judgment, but merely showed the meaning of the declaration therein that the defendant was ''incompetent''. It may be contended that this evidence showed the juror was not, within the meaning of the statute, ''sober''. We think that when it is stated that a juror must be ''sober'' it does not mean that one who occasionally comes under the influence of intoxicating liquor can never sit on a jury. If this were true, few, indeed, of our jurors would be qualified. We are of the opinion that the requirement of sobriety extends only to the time at which the juror sits, and that his habits in regard to intoxicating liquor at other times, unless they have gone so far as to make him of unsound mind at all times, do not affect his qualifications as a juror.

The situation in the present case is very different from what it would be if the order had declared the juror to be ''insane''. The latter phrase implies conclusively general mental incapacity until it is adjudged that the ward has been restored to sanity, and no one under guardianship for that reason may sit upon a jury.

Upon the whole case, we are satisfied that the court did not err in holding that the juror was not disqualified from service at the time he sat upon the jury which convicted the defendant. Since this is the

only question raised by the appeal, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.