ALTEEN STIELER, NOW BROWN, v. MAX STIELER.
L. H. OSTRANDER, EXECUTOR OF ESTATE OF
MAX STIELER, AND OTHERS, MOVING
PARTIES, APPELLANTS.
ALTEEN BROWN, FORMERLY ALTEEN STIELER, v.
L. H. OSTRANDER, EXECUTOR OF ESTATE
OF MAX STIELER.[1]

April 15, 1955.

Nos. 36,242, 36,371.

[1]Reported in 70 N. W. (2d) 127.

314

*Meighen, Sturtz & Peterson* and *Ostrander, Fullerton & Olson,* for appellants.

*Joseph R. Gunderson* and *Gallagher, Madden & Zimmerman,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order for summary judgment in a replevin action adjudging plaintiff Alteen V. Brown, formerly Alteen V. Stieler, the owner of $27,500 value of United States Government Series E Bonds registered as follows: $1,400 thereof—Max D. Stieler or Mrs. Alteen V. Stieler (plaintiff) ; $26,100 thereof—Max D. Stieler, payable on death to Mrs. Alteen V. Stieler (plaintiff).

Max D. Stieler and plaintiff were husband and wife, divorced from each other June 25, 1951. Plaintiff subsequently married Harold Brown July 10, 1951. Max D. Stieler died May 3, 1953. At the time of his divorce, and at the time of his death, the bonds in controversy were in his possession, registered as above disclosed. Lyle H. Ostrander was appointed executor of his estate and as such was named defendant in the replevin action.

There is also involved a separate appeal from an order denying a motion by the above executor that he be substituted for Max D. Stieler as defendant in the divorce proceedings; that they be reopened; and that the trial court make an order interpreting, clarifying, expanding, and correcting the judgment therein which provides:

"Judgment is hereby * * * entered requiring defendant [Max D. Stieler] to pay plaintiff [Alteen V. Stieler] * * * in full, final and complete settlement of all her rights in defendant's property, real and personal, all claims for support, temporary and permanent, for all claims for alimony, temporary and permanent, of all her claims for restoration of property, the sum of seven thousand five hundred ($7,500.00) dollars which shall be in full, final and complete settlement of all claims of every kind, character and description of plaintiff against defendant or his property * * *."

The replevin action was commenced June 23, 1953. Therein, plaintiff based her claim of ownership upon registration of the bonds as

above indicated and United States Treasury Department Regulations governing the same as follows:

"Sec. 315.32. * * * Reissue of a savings bond will be restricted to a form of registration permitted by the regulations in effect on the date of original issue of the bond and will be made only upon surrender of the bond and only in accordance with the provisions of those regulations * * *."

"Sec. 315.45. **Payment or reissue.**—A savings bond registered in the names of two persons as coowners * * * will be paid or reissued as follows:

"(a) **Payment** * * *.—During the lives of both coowners the bond will be paid to either coowner *upon his separate request without requiring the signature of the other coowner; * * *.*

"(b) **Reissue** * * *.—Except as otherwise specifically provided by these regulations, a bond held in coownership may be reissued *during the lives of both coowners only upon the request of both* and under the following specific circumstances:

\* \* \* \* \*

"(iii) if the coowners are divorced or legally separated from each other * * * after the issue of the bond.

\* \* \* \* \*

"(c) * * *—If either coowner dies without having presented and surrendered the bond for payment or authorized reissue, *the surviving coowner will be recognized as the sole and absolute owner of the bond* * * *." (Italics supplied.)

"Sec. 315.46. * * *—A savings bond registered in the name of one person payable on death to another * * * will be paid or reissued as follows:

"(a) [Payment during lifetime of registered owner.] * * *— The bond will be paid to the registered owner during his lifetime *upon his properly executed request as though no beneficiary had been named in the registration.*

"(b) **Reissue during the lifetime of the registered owner as follows:**

"(1) The bond will be reissued, on the duly certified request of the registered owner, * * *.

"(2) * * * *together with the duly certified consent of the designated beneficiary,* to eliminate such beneficiary, or to substitute another person as beneficiary, or to name another person as coowner. * * *

* * * * *

"(c) **Payment or reissue after the death of the registered owner.**— If the registered owner dies without having presented and surrendered the bond for payment or authorized reissue and is survived by the beneficiary, *upon proof of such death and survivorship, the beneficiary will be recognized as the sole and absolute owner of the bond,* * * *." (Italics supplied.)

In the replevin action the executor claimed ownership for the estate of Max D. Stieler on the ground that the judgment in the divorce proceedings had terminated all right and title of plaintiff to the bonds in controversy and in particular relied upon Treasury Regulations, § 315.13(3), which provided:

"A *divorce decree ratifying or confirming a property agreement* between husband and wife or otherwise settling their respective interests in savings bonds, *will be recognized* and *will not be regarded as a proceeding giving effect to an attempted voluntary transfer for the purpose of this section.*" (Italics supplied.)

On July 23, 1953, prior to the order for summary judgment in the replevin action, the executor made the motion for an order interpreting and clarifying the judgment in the divorce proceedings so that it would specify by series, serial number, and denominations all the Series E Bonds then owned by defendant, including those here in controversy, and, if such were intended thereby, that it expressly state that such bonds were to be the sole property of defendant.

On August 25, 1953, the United States Treasury Department wrote the executor as follows:

"The Department has no judicial functions and is bound by the governing regulations which do not provide a basis for construing the language in the property settlement agreement which is incorporated in the divorce decree as approved by the court as having

divested Mrs. Stieler of her interest in the United States Savings Bonds registered in her name and in the name of Max D. Stieler. However, the Department will be glad to consider a decree entered in a court of competent jurisdiction, in proceedings to which the former Mrs. Altine V. Stieler is a party, construing the property settlement agreement approved in the divorce decree as awarding the bonds (which should be described by *series, serial number, denominations and inscriptions) to Mr. Max D. Stieler as his sole property.* * * *

"In the absence of a judicial determination to the contrary as specifically provided in Section 315.13 of the regulations, the provisions of Sections 315.45 and 315.46 * * * govern the disposition of the bonds in question."

On September 25, 1953, in support of his motion, the executor offered the letter in evidence and in addition substantial proof that the judgment in the divorce action was entered pursuant to a prior stipulation for property settlement executed by the parties; that prior thereto plaintiff and her attorneys had been advised by defendant Mr. Stieler that he then owned Series E Bonds, including those now claimed by plaintiff of the value of approximately $40,000; that he owned certain real and personal property as well; that plaintiff at all times had kept defendant's books and made his income tax returns and knew of his ownership of the bonds described and other property; that all such property and bonds had been taken into consideration when the property settlement was made; that plaintiff had signed the stipulation therefor with full knowledge thereof; that it was intended by both parties that all defendant's property remaining after delivery to plaintiff of the cash and personal property awarded her in the judgment, was to be and remain defendant's sole property free of all claims of plaintiff; and that plaintiff had made no claim of any interest or title in the bonds until subsequent to defendant's death.

On September 30, 1953, the trial court made its order rejecting the foregoing offers of proof and denying the executor's motion on the ground, as stated in its memorandum, that the court was "with-

out jurisdiction \* \* \* to amend the findings of fact" of Judge
Martin A. Nelson, his predecessor,[2] who had ordered judgment in
the divorce action. In the memorandum the court further stated
that if the motion were granted—

"\* \* \* plaintiff will be denied the right which the court feels she
has, to litigate the question of the ownership of the bonds as of the
time of the death of Max Stieler as affected by the situation created
when Max Stieler died, leaving the bonds standing in his name and
payable on death to the plaintiff.

\*　　\*　　\*　　\*　　\*

"\* \* \* The issue between the parties is the ownership of these
bonds. That issue can be fully determined in the replevin action."

In the replevin action subsequently heard, plaintiff moved for sum-
mary judgment on the pleadings, relying principally on the United
States treasury regulations above set forth. On February 17, 1954,
the trial court made findings and ordered summary judgment to the
effect that upon the death of Max D. Stieler plaintiff, as co-owner of
certain of the bonds and as designated beneficiary in the remainder
thereof, became the sole owner and entitled to immediate possession
thereof.

■ We believe the trial court erred in holding that it lacked juris-
diction to hear and determine the motion of the executor that he be
substituted as defendant in the divorce action and that an order be
made interpreting and clarifying the judgment therein. The position
of the parties to these proceedings, as well as the letter from the
treasury department, manifest the differing interpretations of the
judgment and the conflicting conclusions drawn therefrom. If it
thus conveys different meanings to these parties, it was within the
right of the executor to move for its clarification and within the
province of the court to hear and determine his motion for such
purpose.

---

[2]Judge Martin A. Nelson had resigned July 16, 1953, to accept appoint-
ment to the Supreme Court of Minnesota. He was succeeded as district judge
by the Hon. A. C. Richardson who presided in all subsequent proceedings.

■ It has been held that the interpretation or clarification of a judgment, ambiguous or uncertain upon its face, involves neither an amendment of its terms nor a challenge to its validity (St. Louis, K. C. & C. R. Co. v. Wabash R. Co. 217 U. S. 247, 30 S. Ct. 510, 54 L. ed. 752; Beard v. Beard, 207 Ark. 863, 183 S. W. [2d] 44; Ballew v. Denny, 296 Ky. 368, 177 S. W. [2d] 152, 150 A. L. R. 770), and that, where, because of its language, it is of doubtful meaning or open to diverse constructions, it may be clarified by the tribunal which ordered it. Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95, 67 A. L. R. 824; Hofer v. Hofer (Ohio App.) 42 N. E. (2d) 165. Such an action does not constitute a collateral attack upon the judgment nor the granting of relief therefrom so as to be violative of statutes[3] or the rules of civil procedure[4] limiting the court's power in this respect. Anderson v. State, 54 Ariz. 387, 96 P. (2d) 281, 126 A. L. R. 501; Ballew v. Denny, *supra;* Fleming v. Kemp, 27 Tenn. App. 150, 178 S. W. (2d) 397. At a hearing upon such a motion, parol evidence may be received and considered for the purpose of determining what was intended by the judgment and to evolve a more definite expression thereof. Anderson v. State, *supra;* Fleming v. Kemp, *supra.* Of course, in applying these rules, full effect must be given to that which is necessarily implied in the judgment, as well as to that actually expressed therein. Parten v. First Nat. Bank & Trust Co. 204 Minn. 200, 283 N. W. 408, 120 A. L. R. 862; Whittier v. Whittier, 237 Iowa 655, 23 N. W. (2d) 435; Toms v. Holmes, 294 Ky. 233, 171 S. W. (2d) 245; Webb v. Smith, 202 Okl. 656, 216 P. (2d) 968.

■ The fact that the judgment was ordered by the predecessor to the present judge of the district court did not preclude or limit the latter in acting on the motion, where the interests of justice so required. It is clear from his memorandum that he was of the opinion that he had been asked "to amend the findings of fact" of his predecessor and that he lacked jurisdiction to do so. As above indicated, the clarification of a judgment does not constitute an amendment of it or the findings upon which it is based. Neither

[3] *E.g.,* M. S. A. 548.14.
[4] Rule 60.02 of Rules of Civil Procedure.

does it result in a judgment differing from that originally ordered. On the contrary, such a clarification serves only to express more accurately the thought which, at all times, the judgment was intended to convey. Accordingly, it is well within the province of a successor judge to bring about this result, particularly where the interests of justice require that the parties be definitely apprised as to the full meaning of the court's determination. Thayer v. Duffy, 240 Minn. 234, 63 N. W. (2d) 28.

■ Likewise, the great weight of opinion clearly supports the right of an executor of the estate of a decedent, who prior to death had been a party in a divorce action, to be substituted as a party therein in the place of decedent to the end that the judgment insofar as it relates to the property settlement therein may be made effective in accordance with its terms. Swanson v. Swanson, 182 Minn. 492, 234 N. W. 675; Schneider v. Grimes, 156 Minn. 25, 193 N. W. 942; see, Annotation, 148 A. L. R. 1119.

■ Based on the foregoing authorities, we must hold that the trial court erred in determining that it lacked jurisdiction to hear the motion and in rejecting the evidence submitted by the executor for the court's consideration in determining the issue. Plaintiff, of course, might properly have submitted evidence in opposition to the motion; and after consideration of all evidence and the files and proceedings in the action, the court then should have made its order, clarifying the judgment so that it would completely express the terms of the settlement and in particular what was intended thereby as to ownership of the bonds (identified by series, serial number, and denomination) which defendant then held.

■ Any determination in the replevin action prior to such clarification and without giving full effect to the judgment as clarified was premature. The judgment as clarified should definitely establish whether the provisions of Treasury Regulations, § 315.13(3), relating to divorce decrees ratifying property settlements, or §§ 315.32, 315.45, and 315.46, governing payment and reissuance of Series E Bonds, should control. As clarified, the treasury department should be able to act thereon without the need of resorting to judicial construction in connection therewith.

The orders appealed from are reversed, and the cases remanded for further proceedings in accordance herewith.

MR. JUSTICE FRANK T. GALLAGHER and MR. JUSTICE NELSON took no part in the consideration or decision of this case.