*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0393**

Gary Michael Lusso, petitioner,
Respondent,

vs.

Muriel Elaine Lusso Quiggle,
Appellant.

**Filed January 12, 2015
Affirmed
Halbrooks, Judge
Dissenting, Minge, Judge[*]**

Hennepin County District Court
File No. 27-FA-12-7949

Victoria Elsmore, Nathan T. Griffin, St. Paul, Minnesota (for respondent)

Jerome M. Rudawski, Ryan W. Wallace, Rudawski Law Office, PA, Roseville, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Minge, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant-wife Muriel Lusso Quiggle challenges the district court's determination that she has no marital interest in respondent-husband Gary Lusso's federal civil employee pension. We affirm.

## FACTS

Quiggle and Lusso were married in April 1973. In November 1973, Lusso joined the United States Air Force. Lusso remained on active duty throughout the duration of the parties' marriage. In 1989, Lusso filed for divorce in Indiana. The divorce was finalized in October 1989, and the relevant portion of the stipulated decree stated:

> The parties acknowledge that for fifteen years of the parties' marriage, Petitioner has been on active duty with the United States Air Force and has been accumulating retirement benefits which will be payable to him should he retire from active military service after 20 years. Accordingly, should Petitioner become eligible for a military pension benefit as the result of his service with the United States Air Force, 37 1/2 percent of any such monthly pension benefit shall be and hereby is awarded to Respondent.

Lusso left the Air Force following the divorce, prior to achieving the 20 years of service necessary to qualify for a military pension.

After a period of unemployment, Lusso eventually secured a non-military position with the federal Veteran's Administration and was later allowed to participate in a Federal Employee Retirement System pension plan after working at the VA for five years. Lusso was required to pay $9,700 to "buy in" to the plan, which he did. Lusso also received credit for his time in the military under the civil pension plan.

In December 2012, Quiggle moved to amend the Indiana divorce decree and to re-open the judgment and decree, on the ground that she has a marital interest in Lusso's civil pension. In September 2013, the district court issued its order, concluding that Quiggle is not entitled to any portion of Lusso's civil pension. The district court determined that the plain language of the decree only entitled Quiggle to an interest in Lusso's "United States Air Force pension," which he never received because he did not complete 20 years of service in the Air Force. Quiggle requested reconsideration of the order. In December, the district court issued its amended order, again denying Quiggle any interest in Lusso's civil pension. Quiggle now appeals.

## D E C I S I O N

Quiggle argues that she is entitled to a portion of Lusso's civil pension benefit, because it is "merely an extension of his military pension benefit, which had a significant marital component." The divorce decree recognized Quiggle's marital interest in a possible military pension, stipulating that "*should* [Lusso] become eligible for a military pension benefit as the result of his service with the United States Air Force, 37 1/2 percent of any such monthly pension benefit shall be and hereby is awarded to [Quiggle]." According to Quiggle, because Lusso's civil pension credits him for his service in the Air Force, he is now receiving his Air Force pension, albeit in a different form and under a different name.

The language of the parties' binding divorce decree controls the outcome of this case. Stipulated dissolution judgments are treated as binding contracts. *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). "The general rule for the construction of contracts

3

. . . is that where the language employed by the parties is plain and unambiguous there is no room for construction." *Starr v. Starr*, 312 Minn. 561, 562-63, 251 N.W.2d 341, 342 (1977). Language is ambiguous if it is reasonably subject to more than one interpretation. *Halverson v. Halverson*, 381 N.W.2d 69, 71 (Minn. App. 1986). If a judgment is ambiguous, a district court may construe or clarify it. *Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955). Whether a dissolution judgment is ambiguous is a legal question. *Tarlan v. Sorensen*, 702 N.W.2d 915, 919 (Minn. App. 2005).

Under the plain language of the decree, Quiggle is only entitled to an interest in a "military pension benefit" resulting from Lusso's service in the Air Force. While Lusso's civil pension credits him for his military-service time, it is clearly not a military pension. And the decree specifically states that Lusso's accumulated retirement benefits from the Air Force would only be payable "should he retire from active military service after 20 years." Lusso did not serve 20 years in the Air Force, and he never received a military pension. The decree's specific reference to the terms of Lusso's Air Force pension, which would only vest after 20 years of service, demonstrates that the potential Air Force pension was the only retirement benefit contemplated in the decree. The decree makes no reference to other pensions, civil or military, or the prospect that Lusso might subsequently roll his service time into another pension if he left the Air Force before completing 20 years of service.

As the dissent notes, Quiggle's argument has some equitable appeal. But Quiggle cannot identify any controlling Minnesota law that permits us to disregard the

4

unambiguous language of the decree in order to apply equitable principles that might entitle her to a portion of Lusso's civil pension. The dissent posits that the implied covenant of good faith and fair dealing is applicable to this context, but we are not aware of that principle ever being expressly applied to a divorce decree in Minnesota. And whether or not there may be ill will between the parties, Quiggle does not argue on appeal that Lusso acted in bad faith to unfairly deprive her of the benefit of their agreement.

Moreover, this is not a situation where we have made a discretionary decision to construe the parties' decree narrowly. Rather, we are applying the plain language of the decree as stipulated by the parties. We decline Quiggle's invitation to substitute this court's judgment for that of the parties when the dissolution decree was fashioned. It is not uncommon for parties to make agreements that look less attractive in hindsight. But that cannot serve as a basis to ignore the plain language of the stipulation.

Because the plain language of the decree limits Quiggle's marital-property interest to Lusso's anticipated Air Force pension, which never vested, the district court acted within its discretion in its determination that Quiggle is not entitled to a portion of Lusso's civil pension.

**Affirmed.**

**MINGE**, Judge (dissenting)

I respectfully dissent. The record in this proceeding is sparse. The parties were married in 1973. They had four children. At the time of their divorce in 1989, respondent Gary Lusso ("husband") was an officer/pilot in the United States Air Force. Appellant Muriel Lusso Quiggle ("wife") was a homemaker. The parties moved often with husband's Air Force career.

The majority opinion sets forth the portion of the decree of dissolution addressing the division of husband's "military pension benefit as the result of his [military] service." In 1991, two years shy of 20 years of service in the military, husband resigned his commission, apparently forfeiting the entire pension benefit, including wife's portion. However, because husband ultimately found employment with the federal government in another capacity, he was able to roll his 18 years of service in the military into the duration of his civilian employment (five years), becoming eligible for a federal-pension benefit based on 23 years of federal employment. This civilian program is known as the Federal Employee Retirement System (FERS). The only requirements that husband faced were to have at least five years of FERS-covered civilian employment and to buy into the FERS system by paying approximately $9,700. The issue on appeal is whether wife is entitled to any of the FERS pension.

I conclude that wife is entitled to a portion of the FERS pension benefit because of the convergence of several considerations. The first consideration is the phraseology of the decree. The language may appear simple and direct: wife gets a defined portion of a

military-pension benefit. It is tempting to say, "no military pension, nothing for wife."

However, the situation before us becomes more difficult when one recognizes that critical words in the decree include: "benefit," "result," and "service." The America Heritage Dictionary (5th ed. 2011) defines "benefit" as follows:

> 1a. Something that promotes or enhances well-being; an advantage . . . b. Help; aid: *The field trip was of great benefit to the students*. 2a. A payment made by a government agency or insurance company to qualifying persons in time of need . . . b. A form of compensation, such as paid vacation time, subsidized health insurance, or a pension . . . 3. A public entertainment, performance, or social event held to raise funds for a person or cause. 4. *Archaic* A kindly deed.

The first meaning of the term "benefit" refers to the "advantage" of an asset. The second meaning refers to a pension; a monetized benefit. The terms "result" and "service" in the decree clearly reference husband's time in the Air Force.

Next we must consider how the addition of the adjective phrase "military pension" affects the meaning of "benefit" and "service." At the time of the dissolution, it appears that the parties were focused on the actual pension checks that husband would receive from the Defense Department. This lines up with the second dictionary meaning of "benefit." But circumstances change. When, as here, a member of the Armed Forces leaves the service before having enough years to become eligible for the Defense Department veteran's pension, the only military-related pension "benefit" is the value of the years in enhancing husband's FERS retirement pay. The "result of . . . service" phrase in the decree is consistent with viewing the decree as encompassing any value resulting

from husband's time spent in the Air Force.[1] At a minimum, the language becomes ambiguous.

Second, follow the "benefit." Here, we are dealing with a variation of the familiar roll-over process. Whenever a transformation of benefits is at issue, the courts should carefully look at the entire transaction. In this case, 18 years of military service was rolled into the FERS plan to establish the 23 years of service for calculating benefits.

Third, at the time of the divorce, husband's potential pension benefit was the principal marital asset subject to division or allocation in the marriage dissolution. *See Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn. 1983) (holding that unvested, unmatured pension benefit is martial property); *Deliduka v. Deliduka*, 347 N.W.2d 52, 54-55 (Minn. App. 1984) (dividing an unvested pension benefit), *review denied* (Minn. July 26, 1984); *cf. Leatherman*, 833 P.2d at 107-08 (including as benefit for wife, husband's civilian FERS pension partially based on military-pension benefit years that were included in FERS even though husband left military without serving enough years to qualify for the military pension).

The dissolution decree recognizes that wife should have half of the military-pension benefit that accrued prior to the parties' separation. This asset should not slip into

---

[1] It is noteworthy and persuasive that the Idaho Supreme Court, when confronted with a similar issue, ruled that years of service toward a lapsed military pension that husband was able to roll into a postal pension were community property. *Leatherman v. Leatherman*, 833 P.2d 105, 107-08 (Idaho 1992). The result was that wife received half of the value that these years added to husband's civilian postal pension. The court reached this conclusion because it considered the phrase "military retirement benefits" as including years of service, not just a monetary benefit. *Id.*

the limbo of unreachable, unaddressed assets.[2] This is especially true when this dimension of the military-pension benefit turns out to be the dominant determinant of the FERS pension benefit.

Fourth, the paragraph in the decree of dissolution addressing the military-pension benefit is couched in terms that assume husband will serve out his 20 years in the Air Force. He is an officer. He is a pilot. At the time of the divorce, there was no reason for wife or the court to expect that a healthy service person would walk away from a generous lifetime pension by refusing to re-up after 16 years. Here, the decree of dissolution does not recognize the possibility that its simple allocation of the pension might become unworkable. Such an eventuality apparently was beyond the comprehension or expectation of the parties or the court. Indeed, there are many ways that the wife's dissolution-decree allocation could be wide of the mark. Husband could serve longer than 20 years in the Air Force or resign due to sudden wealth.

Fifth, there is an assumption of good faith. The record reflects a deep bitterness between the parties. Can husband simply jettison the pension with no consequence? As the majority points out, this is a stipulated decree of dissolution and treated as a contract for legal purposes. But, as Justice Alito has written for the U.S. Supreme Court, "Minnesota law holds that the implied covenant [of good faith and fair dealing] applies to

---

[2] I note that this court has recognized that the benefit of a husband's pension, which was not allocated in a decree of dissolution, may become a factor in increasing the wife's maintenance or possibly divided as omitted property. *Neubauer v. Neubauer*, 433 N.W.2d 456, 461-62 (Minn. App. 1988), *review denied* (Minn. Mar. 17, 1989).

'every contract,' with the notable exception of employment contracts." *Nw., Inc. v. Ginsberg*, 134 S. Ct. 1422, 1432 (2014) (citation omitted).

Here, husband is arguing for a narrow construction of the decree of dissolution. Absent a perfect fit: "wife loses." This approach avoids the roll-over reality. It results in the major marital asset slipping between the cracks. It promotes sharp practices and gamesmanship. In this approach, husband receives full value of his military pension and wipes out wife's share. I submit that such a reading of the situation is incompatible with good faith and fair dealing. *Cf. Leatherman*, 833 P.2d at 107-08 (concluding that the former wife is entitled to the benefit of the years of service in the military).

In sum, I conclude that the dissolution decree is ambiguous and should be interpreted to grant wife the benefit of half of a portion of the roll-over years of military service that built up husband's FERS pension.[3] I would reverse and remand, instructing the district court to determine that portion of the ultimate FERS pension attributable to the 15 marital years of husband's military service and awarding half of that portion to wife subject to husband's recovery of his $9,700 contribution to FERS.

---

[3] The calculation of the allocation is complicated. The parties were married 16 years, but separated prior to the dissolution. As a result, only 15 years of the military-pension benefit was earned while they had a marital home and are considered marital. These 15 years would be 75% of the 20 years of service needed to vest the military pension. Wife's half would be 37 1/2%. Husband stayed in the military 18 years enhancing his pension benefit opportunity by two years after the dissolution. However, I would remand for the district court to make the allocation determination after a hearing.