*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0173**

In re the Marriage of:
Heidi B. Moon, petitioner,
Appellant,

vs.

Roderick H. Moon,
Respondent.

**Filed December 19, 2016
Affirmed in part, reversed in part, and remanded
Smith, John, Judge**[*]

Hennepin County District Court
File No. 27-FA-14-8452

Heidi B. Moon, Edina, Minnesota (pro se appellant)

Jana Aune Deach, Moss & Barnett, Minneapolis, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Jesson, Judge; and Smith, John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm the district court's denial of appellant's request for child support arrears, the denial of appellant's request for need-based and conduct-based attorney fees, and the denial of respondent's request for a parenting-time expeditor.  However, we reverse and remand the district court's parenting-time schedule because the district court made errors in setting that schedule.

## FACTS

Appellant, Heidi B. Moon, and respondent, Roderick H. Moon, were married until their marriage was dissolved by a judgment and decree in Massachusetts in March 2013. The parties are the parents of J.M., born in 2005, and H.M., born in 2007.

In September 2013, a Massachusetts court ordered respondent to pay appellant arrears as a result of two complaints for contempt.  As part of the order, that court modified respondent's child-support obligation to require him to pay 20% of his additional income beyond his base weekly income as additional child support, instead of the 30% requirement originally set forth in the judgment and decree of divorce.

In October 2013, appellant was permitted to move to Minnesota with the minor children after appellant had accepted a job to earn a $75,000 annual salary in Minnesota. Because appellant was now earning a substantial salary of her own, respondent requested a modification, specifically objecting to being required to pay "20% of all additional income of any kind that [respondent] earns above his base salary."

On April 15, 2014, the Massachusetts court issued a judgment modifying the October 2013 order. In the introduction to the order the court explained that "in light of the rather litigious history of the parties, the Court believes it important that this [j]udgment be as clear and as concise as possible." The court applied Massachusetts law, ordered that respondent's child support be modified, and that he pay $550.00 weekly, noting the increased costs associated with the exercise of his parenting time with his children following appellant's move to Minnesota. In determining how much of respondent's bonus income should go to appellant, the Massachusetts court stated "At present, [respondent] is obligated to pay twenty (20%) percent of said bonus as additional child support when it is received. This percentage shall continue in place." That court also ordered appellant to pay for "three round trip airline trips for the children each year (Minnesota – Boston)."[1]

On October 21, 2015, respondent filed a motion in Minnesota district court requesting that that court (1) order a parenting-time schedule for 2016 and 2017; (2) appoint a parenting-time expeditor pursuant to Minn. Stat. § 518.1751 (2014); (3) order reimbursement of $3,162.93 from appellant for travel costs; and (4) order reimbursement of $750 for uninsured healthcare costs incurred by the children. On October 23, 2015, appellant filed a motion asking the district court (1) order respondent to pay $6,667 for child-support arrearages based on an increase in his base salary; (2) confirm the section of the parties' judgment of divorce requiring respondent to pay 20% of all additional income from any source whatsoever; (3) order respondent to provide an accounting of all income

---

[1] Respondent resides in New York City, where he moved in September 2014.

he has received since January 1, 2014 and to pay 20% of any income he has received in excess of his gross annual salary; (4) order respondent to pay $6,438 as reimbursement for his portion of the children's extracurricular activities; (5) declare respondent a frivolous litigant; (6) order that respondent pay need-based and conduct-based attorney fees; and (7) order that respondent pay interest at the statutory judgment rate on all amounts owed until payment is made.

On December 15, 2015, the district court filed its order on the parties' motions. The relevant parts of the district court order denied appellant's motion to require respondent to pay child support arrearages; denied appellant's motion for need-based and conduct-based attorney fees; denied respondent's motion for the appointment of a parenting-time expeditor; and granted respondent's motion to establish a parenting-time schedule.

## DECISION

### I. Was the district court's interpretation of the April 14, 2014 Massachusetts child-support order erroneous as a matter of law?

If a judgment is ambiguous, a district court may construe or clarify it. *Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955). "[I]f language is reasonably subject to more than one interpretation, there is ambiguity." *Halverson v. Halverson*, 381 N.W.2d 69, 71 (Minn. App. 1986). "A district court's determination of the meaning of an ambiguous judgment and decree provision is a fact question, which appellate courts review for clear error." *Suleski v. Rupe*, 855 N.W.2d 330, 339 (Minn. App. 2014). "Findings of fact are clearly erroneous where an appellate court is left with the definite and firm conviction that a mistake has been made." *Goldman v. Greenwood*, 748 N.W.2d 279, 284

4

(Minn. 2008) (quotations omitted). "When determining whether findings are clearly erroneous, the appellate court views the record in the light most favorable to the [district] court's findings." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). Appellate courts "do not disturb findings of fact based on conflicting evidence unless the findings are manifestly and palpably contrary to the evidence as a whole." *In re S.G.*, 828 N.W.2d 118, 127 (Minn. 2013) (quotations omitted).

The disputed language comes from an amended judgment entered April 15, 2014. The original judgment of divorce, entered March 4, 2013, stated:

> In addition to the child support paid on the parties' respective base incomes . . . [respondent] *shall also pay to [appellant] 30% of any gross income of any kind (including but not limited to stock granted to [respondent] that is not otherwise divided as an asset herein)* received on a monthly basis over and above his base income of $2,885/week as child support[.]

(Emphasis added.) A September 2013 order from the Massachusetts district court modified the judgment of divorce to reduce respondent's additional child-support obligation from 30% of gross income of any kind to 20%.

In the April 15, 2014 modification order in dispute, the Massachusetts court stated:

> Because the issues are relatively discrete and in light of the rather litigious history of the parties, the Court believes it is important that this Judgment *be as clear and as concise as possible*.
> . . . .
> In the Court's view, [respondent] is entitled to an offset on a full child support order. He clearly incurs cost associated with effecting his parenting time with his children. The guidelines, do not, however, necessitate a dollar for dollar offset.
> Having listened attentively to the evidence adduced (much of which was not relevant to the matter at hand) the

Court sets the child support obligation at $550.00 weekly. This represents a reduction of $120.00 weekly from a straight application of the child support guidelines based upon [respondent's] base salary of $175,000.00 annually. This amount does not include [respondent's] bonus income. *At present [respondent] is obligated to pay twenty (20%) of said bonus as additional child support when it is received. This percentage shall continue in place.*

. . . .

The Court finds that the amount ordered provides for an equitable balance between a full guideline order and a recognition of some of the costs incurred by [respondent] to exercise his parenting.

(Emphasis added). The original decree, the September 2013 modification, and the April 2014 modification were all issued by the same judge in Massachusetts.

Appellant argues that respondent is still required to pay 20% of all income above the amount of his base salary and that, because respondent's base salary increased, she is entitled to 20% of his increased earnings. Respondent argues that he only has to pay 20% of his "bonus" income because that is what the Massachusetts court required in the April 15, 2014 order. The district court agreed with respondent stating:

> [T]he April 15, 2014, order is clear in its requirement that the father pay $550 per week plus 20% of his *bonus* income as additional child support. There is no reference to any other sum except for bonus income. If the Court had intended for [respondent] to pay additional support based on "income of any kind above his current base salary," it would have clearly specified such a requirement, as it did in the Judgment and Decree. Although [appellant] argues that the judge was using shorthand when he used the word "bonus," as opposed to "income of any kind above his base salary," this Court disagrees. [Respondent] specifically objected to the requirement to pay 20% of "income of any kind"; [appellant] by that time was earning a substantial salary of her own; and the Court stated that its intention was to make [respondent's] child support obligation "as clear and concise as possible."

6

> The written order references only bonus income, and there is no dispute that [respondent] has paid 20% of his bonus income since the time of this order.

We conclude that the district court's finding that 20% of "bonus" income did not include gross income of any kind was not clearly erroneous.

As the district court noted, the April 2014 amendment states "[respondent] is obligated to pay twenty (20%) of said *bonus* as additional child support when it is received" (emphasis added) and not "20% of income of any kind." The Massachusetts court had used the "income of any kind" language in two previous modifications but did not do so in this most recent modification. The Massachusetts court expressly stated its intention to make the latest judgment as clear and concise as possible and could have used the exact language used in its previous orders. But the Massachusetts court did not do so. The record supports the district court's interpretation of the April 2014 Massachusetts order to mean exactly what it said, and not something else.

Further, in the April 15, 2014 order the Massachusetts court specifically stated: "[respondent] would like the Court to disregard his bonus income. For 2013 [respondent's] bonus income was $125,000." In 2013, respondent made a $125,000 bonus from his work at Oppenheimer & Co. Had the Massachusetts court been using "bonus" as the equivalent of "income of any kind," it would likely have included an accounting of other forms of "income of any kind" in addition to his $125,000 bonus from Oppenheimer & Co. in stating respondent's "bonus income."

Appellant argues that the intent of the Massachusetts court was clear that "bonus" meant "income of any kind" because the Massachusetts court had made orders of contempt

requiring payment of additional income. But the contempt order cited by appellant was issued in September 2013 when the controlling decision was still the original judgment of divorce stating that "30% of any gross income of any kind" was to be paid. The Massachusetts court modified that child-support payment as a result of appellant's increased income and the difficulty experienced by respondent exercising his parenting time after appellant moved to Minnesota.

Appellant argues that the district court modified the Massachusetts judgment in violation of Minn. Stat. § 518C.603(c) (2014). "Except as otherwise provided in this chapter, a tribunal of this state shall recognize and enforce, but may not modify, a registered support order if the issuing tribunal had jurisdiction." Minn. Stat. § 518C.603(c). "A registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state." Minn. Stat. 518C.603(b) (2014). In this case, the district court was not modifying the order from the Massachusetts court but rather interpreting an ambiguous provision in the order and enforcing it. Minn. Stat. § 618C.603(c) prohibiting a modification does not apply.

Finally, appellant argues that the Fair Faith and Credit for Child Support Act (FFCCSOA) and the Uniform Interstate Family Support Act (UIFSA) were violated by the district court. "In interpreting a child support order . . . a court shall apply the law of the State of the court that issued the order." 28 U.S.C. § 1738B (h)(2) (2014). However the district court did not base its decision on Minnesota law, but instead applied well-known principles of interpretation. It analyzed the language of the Massachusetts court order which modified the child-support payment, it considered the issues presented to the

8

Massachusetts court, and it considered the plain language of the term "bonus" in light of the Massachusetts court's intention to be as clear and concise as possible. Appellant does not identify any Massachusetts case or statute prohibiting the Minnesota district court from considering these factors in interpreting the child-support obligation of respondent following the April 2014 modification of child-support judgment. In interpreting the meaning of the Massachusetts decision, the district court did not violate the FFCCSOA or the UIFSA.

## II. Did the district court err in denying the appellant's request for need-based and conduct-based attorney fees?

Appellant argues that the district court abused its discretion and erred as a matter of law in denying appellant's request for need-based and conduct-based attorney fees. In the context of reviewing a need-based award of attorney fees, "[t]he standard of review for an appellate court examining an award of attorney fees is whether the district court abused its discretion." *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). The statute states that the district court "shall" award need-based attorney fees if the fees are necessary to allow a party to continue an action brought in good faith, the party from whom fees are requested has the means to pay the fees, and the party seeking fees cannot pay the fees. *Holmberg v. Holmberg*, 588 N.W.2d 720, 727 (Minn. 1999); Minn. Stat. § 518.14, subd. 1.

Appellant seeks $60,000 in attorney fees for costs incurred in the proceedings in Minnesota since May 2015. In denying both need-based and conduct-based attorney fees, the district court concluded that

> Each party's behavior has contributed to the length and
> expense of this proceeding. The parties, both of whom have

9

> graduate degrees in business or finance, appear to have thousands of dollars in attorney fees to both mediate and litigate issues pertaining to travel and extracurricular expenses, which net out to $2,299.12 owed to [appellant]. The Court need say no more.

Appellant argues that the findings by the district court were lacking regarding the need-based attorney fees requirements and that the district court's denial of conduct-based attorney fees was based on improper factors, *i.e.*, that both parties equally contributed to cost.

Need-based attorney fees

Appellant believes that the district court must make finding on each of the requirements of Minn. Stat. § 518.14, subd. 1 ("[T]he court shall award attorney fees" provided it finds that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; that the party from whom fees are sought has the means to pay; and that the party to whom fees are awarded does not have the means to pay them). However,

> a lack of specific findings on the statutory factors for a need-based fee award . . . is not fatal to an award where review of the order reasonably implies that the district court considered the relevant factors and where the district court was familiar with the history of the case and had access to the parties' financial records.

*Geske v. Marcolina*, 624 N.W.2d 813, 817 (Minn. App. 2001) (quotations omitted). The district court clearly considered the statutory requirements because they are specifically listed in the order, the district court had access to the parties' financial records, and the district court was familiar with the case. Further, contrary to appellant's assertion, a

10

showing of disparate income, by itself, is not sufficient for a need-based award because cases pre-dating the three-part standard of Minn. Stat. § 518.14, subd. 1 have been superseded by the statute on this point. *Id.* at n. 2.

The district court's findings indicate that it did not believe that the fees were necessary for the good faith assertion of appellant's rights in the proceeding and that appellant contributed unnecessarily to the length and expense of the proceeding. The Massachusetts district court specifically noted that appellant and respondent had a "rather litigious history." The district court, analyzing all the facts at its disposal, determined that both parties were responsible for "contribut[ing] to the length and expense of this proceeding." Based on substantial support in the record, we conclude that the district court properly exercised its discretion in denying need-based attorney fees.

Conduct-based attorney fees

Appellant argues that the district court abused its discretion in denying conduct-based attorney fees. "In proceedings under chapter 518, a district court may, in its discretion, award attorney fees against a party who unreasonably contributes to the length or expense of the proceeding." *Brodsky v. Brodsky*, 733 N.W.2d 471, 476 (Minn. App. 2007) (quotations omitted); Minn. Stat. § 518.14, subd. 1. "Among other ways, a district court abuses its discretion if it acts against logic and the facts on record, or if it enters fact findings that are unsupported by the record, or if it misapplies the law." *In re Adoption of T.A.M.*, 791 N.W.2d 573, 578 (Minn. App. 2010) (quotations and citations omitted). "Conduct occurring outside the litigation process cannot support an award of conduct-based attorney fees, but if an award of conduct-based fees is proper, it may be made

11

regardless of the recipient's need or the payor's ability to pay." *Brodsky*, 733 N.W.2d at 476.

Appellant's main argument that respondent unreasonably contributed to the length and expense of the proceeding is that he made "frivolous motion[s] to reduce child support" and that the "bulk of [a]ppellant's fees were incurred to respond" to these requests. However, the district court specifically found that "[respondent] has not sought to relitigate issues that were already decided" in determining that respondent was not a frivolous litigant. Further, the district court noted that appellant has "made more motions [in this case] than [respondent] has." Appellant counters that she should not be penalized for filing motions to enforce the child-support order. But just as appellant can bring a motion to enforce a child-support order, respondent can bring a motion to reduce child support if there has been a substantial change in circumstances. *See* Minn. Stat. § 518A.39 (2014 & Supp. 2015).

Based on the specific findings by the district court, we conclude that the district court did not abuse its discretion in refusing the requested conduct-based attorney fees.

**III.    Did the district court abuse its discretion by failing to appoint a parenting-time expeditor based upon appellant's alleged statements regarding domestic abuse?**

A "parenting-time expeditor" is a creature of statute under Minn. Stat. § 518.1751 (2014). "Upon request of either party, the parties' stipulation, or upon the court's own motion, the court may appoint a parenting[-]time expeditor to resolve parenting[-]time disputes that occur under a parenting[-]time order . . . ." Minn. Stat. § 518.1751, subd. 1. The term "may" is permissive. Minn. Stat. § 645.44, subd. 15 (2014). Therefore, the

12

refusal to appoint a parenting-time expeditor is reviewed for an abuse of discretion. *Nolte v. Mehrens*, 648 N.W.2d 727, 732 (Minn. App. 2002).

"A party may not be required to refer a parenting[-]time dispute to a parenting[-]time expeditor . . . if . . . one of the parties claims to be the victim of domestic abuse by the other party." Minn. Stat. § 518.1751, subd. 1a(1). Again, the term "may" is permissive. Minn. Stat. § 645.44, subd. 15.

The district court did not abuse its discretion in refusing to appoint a parenting-time expeditor. The district court concluded that "[t]he [divorce] judgment and decree contains a finding that there was some physical abuse of the mother before and after the marriage." The paragraph in the original judgment and decree reads as follows:

> It is [appellant's] contention that [respondent] engaged in a pattern of abuse of both [appellant] and one of the children both during, an[d] in the case of [appellant], prior to the marriage. Certainly, this behavior is deeply concerning. In the case of [appellant], there is no excuse for [respondent's] behavior, both physically and emotionally. . . . None of the foregoing [discussion of respondent's remorse and counseling] should be read to mean that the Court minimizes [respondent's] odious behavior.

The statute requires that one of the parties "claim" to be a victim of domestic abuse from the other party. Minn. Stat. § 518.1751, subd. 1a(1). This finding in the divorce decree satisfies the requirement of a "claim" of domestic abuse. Relying on this factual finding, we conclude that there is sufficient support in the record supporting the district court's exercise of discretion in refusing to appoint a parenting-time expeditor. We therefore affirm the district court's denial of a parenting-time expeditor.

13

**IV. Did the district court abuse its discretion in its determination of a parenting-time schedule?**

The district court has broad discretion in deciding parenting-time questions based on the best interests of the child and will not be reversed absent an abuse of discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995).

> Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the [district] court at any time upon its own initiative or on the motion of any party and after such notice, if any, as the court orders. *During the pendency of an appeal, such mistakes may be so corrected with leave of the appellate court*.

Minn. R. Civ. P. 60.01 (emphasis added). "A clerical error in reference to an order for judgment or judgment, as regards correction, includes one made by the court which cannot reasonably be attributed to the exercise of judicial consideration or discretion." *Gould v. Johnson*, 379 N.W.2d 643, 646 (Minn. App. 1986), *review denied* (Minn. Mar. 14, 1986) (quotation omitted). As leave of this court is required to correct clerical mistakes during the pendency of an appeal, we conclude that there is nothing prohibiting us from addressing the parenting-time schedule regardless of whether the mistakes are a clerical error or an exercise of judgment and discretion.

Respondent argues that the district court erred by (1) awarding respondent 11 visits with the children in even-numbered years, contrary to that court's intention to award him 12 visits each year; (2) awarding fewer dates in even-numbered years than odd-numbered years for President's Day weekend which conflicts with the children's school schedule; (3) requiring that respondent be with the children in Minnesota over President's Day

14

weekend, prohibiting respondent from taking the children on an annual trip to New Hampshire to ski; (4) inadvertently referring to incorrect dates for the children's Christmas/winter break in 2016; and (5) not stating that the children can travel over spring break in its order while scheduling the children to travel over spring break in the parenting-time schedule.

The district court stated:

> The Court will order the schedule outlined in Exhibit A.
>
> . . . With the above schedule, the Court is making the best of an imperfect situation. The schedule allows [respondent] to see the children frequently and to have an active co-parenting role. Although there are some periods where [respondent] will not see the children for more than 30 days, the ordered schedule balances [respondent's] interest in frequency with minimization of the children's travel. It also minimizes or eliminates the time the children miss school.
>
> . . . Each year, there will be a total of 12 visits, with seven visits taking place in Minnesota and five visits outside of Minnesota.

Exhibit A sets out 11 visits for 2016 and 12 for 2017; five of the 2016 visits require the children to stay with respondent, six taking place in Minnesota. Respondent argues that the district court intended to award him 12 visits per year and it was an oversight to only award 11. We conclude that the district court erred by leaving out one Minnesota visit in even-numbered years. The district court does not provide any explanation as to why there are only 11 visits in even-numbered years. Respondent suggests that adding an additional weekend visit in April in even-numbered years in Minnesota would provide him with the 12 visits per year. We remand this issue to the district court to determine the proper time

15

for the twelfth visit which would take place in Minnesota. The district court is the proper court to determine a visitation schedule that is in the best interest of the children and does not interfere with their school schedule.

Respondent next argues that the district court made errors in the dates of the children's school breaks for President's Day weekend. Respondent argues that the children traditionally have Monday and Tuesday of President's Day weekend off and, in odd years, the district court granted him both the Monday and Tuesday of President's Day weekend. However, in 2016 and in even years, the district court did not include both Monday and Tuesday of President's Day weekend. Respondent argues that it was the district court's intent to include the Tuesday after President's Day in both even and odd years and it was a court oversight not to include the Tuesday in 2016 and even years going forward. The district court ordered four days of visitation (February 19-22) in 2016 and even years and five days of visitation in 2017 and odd years (February 17-21). While this argument is moot as President's Day weekend of 2016 has already passed, there is no reasonable explanation for why the visitation should be less in even years than in odd years. We conclude that awarding fewer days in even years than in odd years is an error and remand to the district court in order to establish dates over President's Day weekend that are the same in even years and in odd years.

Respondent also argues that the district court abused its discretion in requiring that respondent be in Minnesota with the children over President's Day weekend which would prohibit them from taking an annual trip to New Hampshire to ski. Respondent did not raise this issue or even mention an annual ski trip to New Hampshire to the district court.

16

An appellate court generally does not address questions not previously presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Because respondent did not give the district court the opportunity to consider the annual ski trip to New Hampshire in determining a visitation schedule, we conclude that the district court did not abuse its discretion by requiring respondent to be in Minnesota with the children over President's Day.

Respondent argues that the district court abused its discretion by inadvertently referring to incorrect dates for the children's Christmas/winter break in 2016. The district court set the dates for the Christmas/winter break visitation time based on the 2015 winter break period. Respondent argues that the correct dates for the children to visit him in 2016 would be from December 23, 2016 through December 31, 2016 and by following the dates ordered by the parenting-visitation schedule the children would be forced to miss school. Nothing in the record confirms that these are the correct dates of respondent's visitation over winter break. However, if the district court wished to minimize or eliminate time missed from school, then ordering the children to travel on dates that they have school is an abuse of discretion. We remand to the district court in order to establish a parenting schedule for the Christmas/winter break that can be easily applied in even and odd years moving forward, taking special consideration of the children's school schedule.

Finally, respondent requests that the order be clarified to clearly state that the children can travel over spring break. The order states that "[t]he children will travel only over the summer break, Thanksgiving, and Christmas" but Exhibit A requires the children to travel to meet respondent over spring break. The district court clearly intended the

children to be allowed to travel over spring break as an entire finding states "[t]he [district court] will order the schedule outlined in Exhibit A" and Exhibit A states that the children will travel over spring break. We conclude that the omission of spring break from the list of times the children will travel is an oversight that can easily be rectified on remand.

**Affirmed in part, reversed in part, and remanded.**